2014 COA 181

**IN RE the ESTATE OF Sidney L. RUNYON, Protected Person.**

**Department of Veterans Affairs, Interested Non–Party Respondent,**

**and**

**Elizabeth Knight and Gladys Runyon, Petitioners–Appellants,**

**v.**

**BOKF, N.A., d/b/a Colorado State Bank and Trust, Appellee.**

**Court of Appeals No. 14CA0261**

Colorado Court of Appeals, Div. IV.

Announced December 31, 2014

Arapahoe County District Court No. 13PR717, Honorable James F. Macrum, Judge

Elizabeth Knight and Gladys Runyon, Pro Se

Mona S. Goodwin, Denver, Colorado, for Appellee BOKF, N.A.

Opinion by JUDGE NAVARRO

¶ 1 Gladys Runyon and Elizabeth Knight appeal the trial court's orders appointing a guardian, conservator, and Uniform Veterans' Guardianship Act guardian for their relative, Sidney L. Runyon. We remand with directions.

### I. Background

¶ 2 Gladys Runyon (Mother) was the authorized payee for Sidney Runyon's Department of Veterans Affairs (VA) benefits until August 2011, when Elizabeth Knight (Sister) became the payee. In February 2012, the VA designated the Colorado State Bank and Trust (Bank) as payee.

¶ 3 The Bank petitioned for appointment as Runyon's guardian under the Uniform Veterans' Guardianship Act (UVGA), §§ 28–5–201 to –223, C.R.S.2014, in Denver Probate

Court. The Bank also filed a petition nominating Jeanette Goodwin as Runyon's guardian under the probate code. The Denver Probate Court concluded that the Bank's petitions were not filed in the proper venue. But it appointed Goodwin as emergency guardian. That appointment expired in August 2012.

¶ 4 Ten months after the expiration of the emergency guardianship, Mother and Sister sought appointment as co-guardians and conservators in Arapahoe County. The trial court appointed a visitor to interview Runyon, Mother, and Sister. Runyon advised the visitor that he did not want Mother and Sister appointed as his conservators and guardians. Based on the visitor's report, the court appointed counsel for Runyon.

¶ 5 The Bank then entered an appearance, sought appointment as conservator and UVGA guardian, and nominated Goodwin as guardian.

¶ 6 At the appointment hearing in December 2013, it was uncontested that Runyon was an incapacitated person who needed both a guardian and a conservator. Runyon's attorney explained that he had met with Runyon and had learned Runyon's preferences as to who should be appointed guardian and conservator. The attorney told the trial court that Runyon preferred the Bank and Goodwin, rather than Mother and Sister. Although present, Runyon did not address the court. Still, relying on Runyon's preferences, the court appointed the Bank as conservator/UVGA guardian and Goodwin as guardian under the probate code.

## II. Appointment of Goodwin and the Bank

¶ 7 Mother and Sister contend that the trial court erred in appointing Goodwin and the Bank, rather than them, to manage Runyon's affairs. Specifically, Mother and Sister assert that (1) their purported status as designated payees for Runyon's VA and Social Security Administration (SSA) benefits entitled them to be appointed as co-conservators and co-guardians and (2) the court should not have given effect to Runyon's preferences. We disagree with the first point but remand for further proceedings on the second point.

## A. Standard of Review

¶ 8 "The grounds for appeal from an order appointing a guardian [or conservator] are limited." A. Kimberley Dayton et al., *Advising the Elderly Client* § 34:40 (2014). Trial courts are in a "better position to judge the character, and appropriateness of those who would be guardian or conservator" because they preside over the appointment hearing. *Id.* Thus, " 'much must be left to the sound discretion of the trial judge.' " *In re Mitchell*, 914 S.W.2d 844, 848 (Mo.Ct.App.1996) (quoting *In re Gollaher*, 724 S.W.2d 597, 600 (Mo.Ct.App.1986)); *see also id.* at 848–49 ("[T]he decision of whom to appoint lies within the sound discretion of the trial court."); *In re Guardianship of Kowalski*, 478 N.W.2d 790, 792 (Minn.Ct.App.1991) ("The appointment of a guardian is a matter peculiarly within the discretion of the probate court.").

¶ 9 As a result, an appellate court reviews the trial court's appointment of a guardian or conservator for an abuse of discretion. *See Koshenina v. Buvens*, 130 So.3d 276, 280 (Fla.Dist.Ct.App.2014); *In re Moses*, 273 Ga.App. 501, 615 S.E.2d 573, 575 (Ga.Ct.App.2005); *In re Estate of Johnson*, 303 Ill.App.3d 696, 236 Ill.Dec. 880, 708 N.E.2d 466, 472 (1999); *Kowalski*, 478 N.W.2d at 792; *In re Conservatorship of Lundgaard*, 453 N.W.2d 58, 63 (Minn.Ct.App.1990); *Keyser v. Keyser*, 81 S.W.3d 164, 168 (Mo.Ct.App.2002); *In re Estate of Haertsch*, 437 Pa.Super. 187, 649 A.2d 719, 720–21 (1994); *In re Conservatorship of Gaaskjolen*, 844 N.W.2d 99, 101 (S.D.2014); *In re Guardianship of Blare*, 589 N.W.2d 211, 213 (S.D.1999); *In re Tyler*, 408 S.W.3d 491, 495 (Tex.App.2013). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo.2008); *see also Mitchell*, 914 S.W.2d at 848 (In reviewing a decision on whom to appoint as guardian or conservator, " 'appellate courts should defer to [the trial judge's] discretion unless the ruling is against the circumstances, underlying policies, [statutory] preferences of appointment, ... or against the weight of the evidence to support the judgment.' " (quoting

*Gollaher,* 724 S.W.2d at 600)). An abuse of discretion also occurs if a court misapplies the law. *Freedom Colo. Info.,* 196 P.3d at 899.

### B. General Principles

#### 1. Appointment of Guardians

¶ 10 A "guardian" is "an individual at least twenty-one years of age, resident or non-resident, who has qualified as a guardian of a minor or incapacitated person pursuant to appointment by a parent or by the court." § 15–14–102(4), C.R.S.2014. When appointing a guardian, a trial court must find by clear and convincing evidence that the respondent[1] is an incapacitated person whose needs cannot be met by less restrictive means. § 15–14–311(1)(a), C.R.S.2014; *see also In re Estate of Morgan,* 160 P.3d 356, 358 (Colo.App.2007). An "[i]ncapacitated person" is a person, other than a minor, "who is unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance." § 15–14–102(5).

¶ 11 The probate code sets forth the "order of priority" a court shall consider when selecting a guardian. § 15–14–310(1), C.R.S. 2014. The first two priorities are relevant here:

(a) A guardian, other than a temporary or emergency guardian, currently acting for the respondent in this state or elsewhere; [and]

(b) A person[2] nominated as guardian by the respondent, including the respondent's specific nomination of a guardian made in a durable power of attorney or given priority to be a guardian in a designated beneficiary agreement made pursuant to article 22 of this title.

---

**1.** "Respondent" means an "individual for whom the appointment of a guardian or conservator ... is sought." § 15–14–102(12), C.R.S.2014.

**2.** "Person" means an "individual, corporation, business trust, estate, trust, partnership, limited

*Id.* But a respondent's nomination of a guardian creates a priority for that nominee only if the respondent had "sufficient capacity to express a preference" at the time of the nomination. § 15–14310(2).

¶ 12 The comment to section 15–14–310 makes clear that the respondent may nominate a guardian orally at the appointment hearing. § 15–14–310 cmt.; *see* § 2–5–102(1)(c), C.R.S.2014 (revisor of statutes may add such editorial notes and other matter as deemed appropriate by the committee on legal services). Although this comment is not a part of the statute, we find it persuasive because it is identical to the comment to section 5–310 of the Uniform Guardianship and Protective Proceedings Act, on which section 15–14–310 is based. *See* § 15–14–101, C.R.S.2014; Unif. Guardianship & Protective Proceedings Act § 5–310 cmt. (amended 1997/1998), 8 Pt. III U.L.A. 70–71 (2014); *see also* § 15–14–121, C.R.S.2014 ("In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."); *Copper Mountain, Inc. v. Poma of Am., Inc.,* 890 P.2d 100, 106 (Colo.1995) ("Without more, we accept the intent of the drafters of the uniform law as that of our own General Assembly by its verbatim enactment of the uniform act provision.").

¶ 13 Finally, "for good cause shown," a court may decline to appoint a person having statutory priority and, instead, appoint a person "having a lower priority or no priority." § 15–14–310(3).

#### 2. Appointment of Conservators

¶ 14 A "conservator" is "a person at least twenty-one years of age, resident or non-resident, who is appointed by a court to manage the estate of a protected person." § 15–14–102(2). As relevant here, a court may appoint a conservator in relation to the estate and affairs of an individual if the court finds:

---

liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." § 15–14102(10).

(I) By clear and convincing evidence, the individual is unable to manage property and business affairs because the individual is unable to effectively receive or evaluate information or both or to make or communicate decisions, even with the use of appropriate and reasonably available technological assistance, or because the individual is missing, detained, or unable to return to the United States; and

(II) By a preponderance of evidence, the individual has property that will be wasted or dissipated unless management is provided or money is needed for the support, care, education, health, and welfare of the individual or of individuals who are entitled to the individual's support and that protection is necessary or desirable to obtain or provide money.

§ 15–14–401(1)(b), C.R.S.2014.

¶ 15 The order of priority relevant to selecting a conservator is similar to that applicable to a guardian. Once again, the first and second priorities are pertinent here:

(a) A conservator, guardian of the estate, or other like fiduciary appointed or recognized by an appropriate court of any other jurisdiction in which the protected person resides; [and]

(b) A person nominated as conservator by the respondent, including the respondent's specific nomination of a conservator made in a durable power of attorney or given priority to be a conservator in a designated beneficiary agreement made pursuant to article 22 of this title, if the respondent has attained twelve years of age.

§ 15–14–413(1), C.R.S.2014.

¶ 16 As with the selection of a guardian, a respondent's nomination of a conservator creates a priority if the respondent had "sufficient capacity to express a preference" at the time of the nomination. § 15–14–413(2). The respondent may nominate a conservator orally at the appointment hearing. § 15–14–413 cmt.; Unif. Guardianship & Protective Proceedings Act § 5–413 cmt. (amended 1997/1998), 8 Pt. III U.L.A. at 102–03.

¶ 17 A court may decline to appoint as conservator a person having priority and instead appoint a person having "a lower priority or no priority," provided there is good cause to do so. § 15–14–413(4).

### 3. Appointment of UVGA Guardians

¶ 18 A trial court may appoint a UVGA guardian to receive the VA benefits of a ward [3] when, for example, the ward has been rated mentally incompetent by the VA. §§ 28–5–204, –202(2), C.R.S.2014. An individual, partnership, or corporation may file a petition for appointment as a UVGA guardian. §§ 28–5–202(6), –206(1), C.R.S.2014. A UVGA guardianship "is of limited effect and relates primarily to the receipt of veterans' benefits." *In re Estate of Roosa,* 753 P.2d 1028, 1037 (Wyo.1988). VA documentation that the ward is incompetent "shall be prima facie evidence of the necessity" to appoint a UVGA guardian. § 28–5–208, C.R.S.2014. The UVGA does not prescribe an order of priority for appointment if there are competing petitions. *See Roosa,* 753 P.2d at 1036–37. Thus, the UVGA does not preclude a court from considering the order of priority set forth in the general conservatorship or guardianship statute when deciding whom to appoint as a UVGA guardian. *Cf.* § 15–14–120, C.R.S.2014 (stating that the UVGA prevails over any *inconsistent* provision of the general guardianship and conservatorship statutes).

### C. Further Proceedings Are Necessary to Determine Whether the Trial Court Acted Within Its Discretion

¶ 19 Because the statutory provisions are similar, we engage in a single analysis of the trial court's appointment of a guardian, conservator, and UVGA guardian for Runyon.

### 1. Mother and Sister Were Not Current Guardians or Conservators

¶ 20 Neither Mother nor Sister fell within the first statutory priority for appointment because neither was a current guardian or conservator. *See* §§ 15–14–310(1)(a), –413(1)(a). With respect to an adult ward, a guardian is a person who has qualified as a guardian "pursuant to appointment ... by

---

**3.** A "ward" under the UVGA is a "beneficiary of the [VA]." § 28–5202(8), C.R.S.2014.

the court." § 15–14–102(4); *see also* § 15–14–301, C.R.S.2014 ("A person becomes a guardian of an incapacitated person upon appointment by the court."). Becoming a conservator also requires appointment by a court. § 15–14102(2). There was no evidence that a court had appointed Mother or Sister to any role.

¶ 21 Moreover, standing alone, Mother and Sister's purported appointments as designated payees of Runyon's SSA and VA benefits did not qualify them as current guardians or conservators. The SSA's first priority for appointment as representative payee for an SSA beneficiary is a "legal guardian, spouse (or other relative) who has custody of the beneficiary or who demonstrates a strong concern for the personal welfare of the beneficiary." 20 C.F.R. § 416.621(a)(1) (2014). Under this regulation, the SSA may select a person as a representative payee even if that person has not been appointed by a court as a fiduciary. Similarly, the VA's selection of an authorized payee of a ward's benefits is not limited to those who have been appointed by a court. *See* 38 C.F.R. §§ 13.55, 13.58 (2014). In both instances, the federal agency—not a court—generally selects the representative payee.

¶ 22 Furthermore, as to Runyon's VA benefits, Mother and Sister were *removed* as payees by 201—before the proceedings at issue here.

¶ 23 Accordingly, neither Mother nor Sister qualified under the first statutory priority for appointment as guardian or conservator.[4]

### 2. The Trial Court Did Not Determine Whether Runyon Had Sufficient Capacity to Nominate

██ ¶ 24 The second statutory priority for appointment is a person nominated by the respondent. §§ 15–14–310(1)(b), –413(1)(b). Through his attorney at the hearing, Runyon nominated the Bank as conservator/UVGA guardian and Goodwin as guardian. The trial court accepted those nominations.

**4.** Runyon appointed Mother as an agent under a durable power of attorney for health care in 2010. Such an agent has the third statutory priority for appointment as guardian and has no priority for appointment as conservator. See

¶ 25 Mother and Sister argue that the court could not accept Runyon's preferences expressed at the hearing because he was an incapacitated person who needed a guardian and a conservator to manage his affairs. To the extent Mother and Sister contend that an incapacitated person's nomination can never create priority for the nominee, we disagree. Because, however, the record does not show that the trial court found that Runyon had sufficient capacity to express a preference at the time of the nominations, a remand is necessary.

██ ¶ 26 As noted, a respondent's nomination creates priority for the nominee only if, at the time of the nomination, "the respondent had sufficient capacity to express a preference." §§ 15–14–310(2), –413(2). But a finding that the respondent is an "incapacitated person" within the terms of the statute does not necessarily mean that the respondent lacks sufficient capacity to express a preference as to a guardian or conservator. Neither the definition of incapacitated person nor the criteria for appointment of a conservator automatically exclude the ability to make a rational choice as to the selection of a guardian or conservator. *See* §§ 1514–102(5), –401(1)(b). Therefore, an incapacitated person may "still be able to express an intelligent view as to his choice of guardian, which view is entitled to consideration by the court." *In re Guardianship of Macak*, 377 N.J.Super. 167, 871 A.2d 767, 772 (App.Div. 2005).

¶ 27 Indeed, by explaining that a respondent may nominate a guardian or conservator orally at the appointment hearing itself, the drafters of the uniform law recognized that an incapacitated person may possess sufficient capacity to express such a preference. *See* §§ 15–14–310 cmt., –413 cmt.; *cf. Copper Mountain*, 890 P.2d at 106 (giving deference to the intent of the drafters of the uniform law). In other words, the statutory scheme permits a trial court to find that the respondent both needs protection and has

§ 15–14–310(1)(c), C.R.S.2014. Hence, as will be discussed, Runyon's nomination of Goodwin and the Bank created the highest priorities for appointment available to the court.

sufficient capacity to nominate a guardian or conservator. *See Moses,* 615 S.E.2d at 575 (affirming trial court's order that respondent needed a guardian but had sufficient capacity to nominate a guardian); *Kowalski,* 478 N.W.2d at 793 (holding that the trial court abused its discretion when it found that the incapacitated person did not have the capacity to express a preference because the medical testimony indicated that she had the capacity to do so); *see also In re Estate of Romero,* 126 P.3d 228, 231 (Colo.App.2005) ("The appointment of a conservator or guardian is not a determination of testamentary incapacity of the protected person.").

¶ 28 Even so, the trial court made no finding as to Runyon's capacity to nominate at the hearing. The court's explanation for giving effect to Runyon's preferences for guardian and conservator was as follows:

> [T]he Court's heard the evidence in this case and has reviewed the file. The Court in both the guardianship proceeding pursuant to CRS 15–14–310 in considering priority of nomination must consider a person nominated as guardian, includ[ing] the Respondent's specific nomination of a guardian.
>
> With respect to a conservator under CRS 1514–413 [the Court] must consider a person nominated as conservator by the Respondent. In both cases the Respondent, Mr. Sidney Runyon, has requested that the Bank and Ms. Goodwin be appointed in their respective positions. The Court finds that this is the wish of Sidney Runyon and the Court will abide by his wishes.

¶ 29 The absence of a finding on Runyon's capacity to nominate is troubling in light of the following circumstances:

- Runyon did not testify at the hearing, and his preferences were expressed only through his court-appointed attorney.
- Although Runyon's counsel cited Rule of Professional Conduct 1.14 and represented that Runyon could "guide me and direct me with regard to his opinion and what he wants to have happen in his own affairs," his counsel did not explicitly affirm that Runyon had sufficient mental capacity to express a pref-

erence as to his guardian or conservator. *Cf.* Colo. RPC 1.14 cmt. 1 (A "severely · incapacitated person may have no power to make legally binding decisions.").

- At the hearing, Sister called into question Runyon's capacity to nominate when she claimed that he had nominated the Bank and Goodwin only because "he is not altogether there," due to his mental illness.
- Although Runyon had told the court visitor that he did not want Mother and Sister to serve as guardian and conservator, he had also told the visitor that he wanted his "wife" to serve in both capacities. There is no evidence that Runyon was married, and it appears that he may have been referring to one of his caregivers.
- No medical or other testimony was presented supporting Runyon's capacity to nominate. *Cf. Kowalski,* 478 N.W.2d at 793 (testimony of medical experts showed that respondent had the capacity to nominate).
- In its order appointing Goodwin as guardian, the trial court found that Runyon "is a 100% service-connected disabled veteran suffering from a severe and persistent mental illness.... He has little or no insight into his mental illness and demonstrates impaired judgment."

For these reasons, we cannot affirm the trial court's decision to give effect to Runyon's preferences.

¶ 30 Although the trial court—upon a showing of good cause—had the authority to appoint the Bank and Goodwin regardless of the validity of Runyon's nominations, the court did not make any findings relevant to good cause. See §§ 15–14–310(3), –413(4).

¶ 31 Accordingly, the record does not adequately support the trial court's selection of Runyon's guardian and conservator/UVGA guardian.

## III. Remand Order

¶ 32 We remand to the trial court with directions to hold an evidentiary hearing to

determine whether Runyon had sufficient capacity to nominate the Bank and Goodwin when he nominated them in December 2013. If the court finds that he had such capacity, the court should reaffirm the appointments of the Bank and Goodwin. If the court does not find that Runyon had sufficient capacity to nominate a conservator or guardian, the court should consider whether in December 2013 another person had statutory priority and whether good cause existed to appoint the Bank, Goodwin, or another person notwithstanding any statutory priority. The

Bank shall remain as conservator/UVGA guardian and Goodwin as guardian until further order of the trial court.

JUDGE WEBB and JUDGE KAPELKE * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2014.