The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 1, 2019

**2019COA123**

**No.18CA1770, *Ferraro v. Frias Drywall, LLC* — Civil Procedure
— Default; Torts — Negligence; Public Health and Environment
— Air Quality Control — Asbestos Control; Administrative Law
— Department of Health and Environment — Control of
Hazardous Air Pollutants**

A division of the court of appeals considers a novel procedural

issue and a novel substantive issue in this negligence action based

on a failure to inspect for asbestos.  The division first holds that

under C.R.C.P. 55, a district court may sua sponte reconsider

liability to determine whether a viable cause of action exists after

the clerk's entry of default but before the entry of a default

judgment.  The division further holds that amendments to the

Department of Public Health and Environment Regulations do not

impose an asbestos inspection duty on the homeowner of a single-

family dwelling, contrary to the district court's finding, or on the

contractor. Because there was no asbestos inspection duty, we affirm the district court's judgment dismissing the case.

COLORADO COURT OF APPEALS 2019COA123

Court of Appeals No. 18CA1770
Arapahoe County District Court No. 17CV32889
Honorable Elizabeth Beebe Volz, Judge

John Ferraro and Sandra Ferraro,

Plaintiffs-Appellants,

v.

Frias Drywall, LLC,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Fox and Welling, JJ., concur

Announced August 1, 2019

Montgomery Little & Soran, P.C., John R. Riley, Greenwood Village, Colorado,
for Plaintiffs-Appellants

No Appearance for Defendant-Appellee

¶ 1     In this negligence action between plaintiff homeowners, John and Sandra Ferraro, and defendant contractor, Frias Drywall, LLC, premised on Frias's failure to test for asbestos before beginning renovation, we must decide two issues that no Colorado court has considered — one procedural and one substantive.

¶ 2     The procedural question asks: After an entry of default but before entry of the default judgment, may a court sua sponte reconsider liability at the damages hearing and dismiss the case for failure to state a claim?  We answer that question "yes," and hold that a court may reconsider whether the unchallenged facts set forth in the complaint state a legitimate cause of action after default is entered, because this holding furthers the goal of a just, speedy, and inexpensive determination of civil actions.  C.R.C.P. 1(a).

¶ 3     The substantive question asks: Did amendments to the Department of Public Health and Environment Regulations, adding "single-family residential dwellings" to the asbestos regulations, create a duty to inspect for asbestos before beginning construction? And, if so, who has the inspection duty — the contractor or the homeowner?  We answer the first substantive question "no," contrary to the district court, and hold that the plain language of

the regulatory amendments does not create an inspection duty for single-family dwellings. Absent a duty, the holding in *Corcoran v. Sanner*, 854 P.2d 1376 (Colo. App. 1993), that a contractor has no duty to inspect for asbestos before beginning construction, applies here and supports the court's judgment dismissing the case on alternative grounds. For these reasons, we affirm the court's judgment on different grounds and disapprove its conclusion that a homeowner has the duty, under the regulations, to inspect for asbestos.

## I.    Factual and Procedural Background

¶ 4    The Ferraros entered into an oral contract with Frias to remove the popcorn ceiling from their home. After Frias completed the work, the Ferraros became concerned by the significant amount of residual dust and decided to test for asbestos. The samples tested positive. The Ferraros then hired an asbestos abatement company and spent $18,390 to remove the asbestos from their home.

¶ 5    Alleging that Frias had negligently failed to test for asbestos before beginning construction, the Ferraros filed their complaint seeking reimbursement of more than $41,000 for asbestos

2

abatement, contaminated personal items, and replacement carpet. They also requested annoyance and inconvenience damages of approximately $41,000.  They claimed that Frias owed them a duty to test for asbestos before beginning renovation.  Frias never responded to the complaint.

¶ 6     The Ferraros moved for entry of default, and the clerk entered a default.  They then moved for a default judgment.  The district court granted the motion in part and set a hearing to determine damages.  At the hearing, the court asked the Ferraros to address whether Frias had a duty to inspect for asbestos and requested briefing.  The Ferraros responded with two arguments.  First, they asserted that the clerk's entry of default rendered Frias liable as a matter of law, so the court had no authority to reconsider, sua sponte, whether they had a viable cause of action.  Second, they asserted that the amended asbestos regulations impose a duty on contractors to inspect for asbestos in single-family residences. Alternatively, they argued that because Occupational Safety and Health Administration (OSHA) standards require contractors to protect their employees, these same standards required contractors

3

to inspect single-family residences for asbestos before beginning construction.

¶ 7 The court disagreed with their contentions. Because Colorado had never decided the procedural issue, the court relied on federal authorities interpreting Fed. R. Civ. P. 55, which is substantially similar to C.R.C.P. 55. It found persuasive cases interpreting the federal rule to permit a court to examine the sufficiency of a legal claim after a default is entered.

¶ 8 As well, it agreed with the Ferraros that the amended regulations created an inspection duty for single-family dwellings and, thus, that *Corcoran* is no longer good law. *See generally* Dep't of Pub. Health & Env't Reg. 8, 5 Code Colo. Regs. 1001-10. And it found that the regulations do not specify who owes that duty. Therefore, it applied common law negligence factors to the facts in the complaint to find that the inspection duty rests with the homeowner, not the contractor. It denied the motion to enter default judgment and dismissed the case without prejudice. The judgment is final for purposes of our review because the complaint fails to allege a viable cause of action and cannot be refiled. Therefore, the court's dismissal effectively constitutes a dismissal

4

with prejudice. *Wilbourn v. Hagan*, 716 P.2d 485, 485 (Colo. App. 1986).

## II.    Dismissal After Entry of Default

¶ 9    The Ferraros contend that the clerk's entry of default, after Frias failed to respond, established liability as a matter of law and precluded the court from further considering this issue. We are not persuaded.

### A.    Standard of Review and Law

¶ 10    Whether to set aside a default judgment is a decision within the court's discretion that we review for an abuse of discretion. *Meyer v. Haskett*, 251 P.3d 1287, 1293-94 (Colo. App. 2010). Therefore, we similarly review its decision to set aside a clerk's entry of default for an abuse of discretion. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or misapplies the law. *Sebastian v. Douglas Cty.*, 2016 CO 13, ¶ 18; *In re Estate of Runyon*, 2014 COA 181, ¶ 9.

¶ 11    A default judgment comprises two steps: "entry of default" by the clerk and "entry of default judgment" by the court. *See* C.R.C.P. 55(a); *see also Singh v. Mortensun*, 30 P.3d 853, 855 (Colo. App. 2001) ("[W]e note that the entry of default and the entry of a default

5

judgment are separate and distinct.").  When the party against whom relief is sought fails to respond or otherwise defend the action, the court clerk "shall enter [the party's] default."  C.R.C.P. 55(a); *see also Plaza del Lago Townhomes Ass'n v. Highwood Builders, LLC*, 148 P.3d 367, 372 (Colo. App. 2006).  The "entry of default" accepts the complaint's allegations and establishes the defendant's liability, but it does not establish damages.  *Dickinson v. Lincoln Bldg. Corp.*, 2015 COA 170M, ¶¶ 22-23.  Indeed, "[w]hen a default has been entered, but damages have not been proven, there is no final judgment.  Thus, the entry of default is simply an interlocutory order that, alone, determines no rights or remedies."  *Singh*, 30 P.3d at 855.

¶ 12    After the entry of default, the court then determines damages and enters a default judgment.  *See* C.R.C.P. 55(b); *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 703 (Colo. 2009).  Until that occurs, the judgment is not final.  *See Singh*, 30 P.3d at 855.

¶ 13    C.R.C.P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  A court may also examine a cause of action sua sponte to

determine the existence of a duty, before the clerk enters default. *Schenck v. Van Ningen*, 719 P.2d 1100, 1101-02 (Colo. App. 1986) (explaining that although "the trial court should not go beyond the pleadings presented" without a hearing on a motion for default judgment, the trial court properly denied the motion where "the pleadings on their face reveal that no cause of action" was stated).

### B. Analysis

¶ 14 While *Schenck* authorizes a court to examine the sufficiency of a complaint sua sponte *before* the entry of default, no case in Colorado has considered whether that authority exists *after* the clerk enters default. The Ferraros urge us to find that the entry of default "establishes a defaulting party's liability" as a matter of law and that it cannot be disturbed. *Dickinson*, ¶ 28. We reject their interpretation and conclude, consistent with federal precedent, that a complaint's legal insufficiency constitutes "good cause," under C.R.C.P. 55(c), to set aside the entry of default and dismiss the case.

¶ 15 C.R.C.P. 55 is substantially similar to Fed. R. Civ. P. 55. *See Plaza del Lago Townhomes Ass'n*, 148 P.3d at 371. Therefore, we may rely on federal cases interpreting Fed. R. Civ. P. 55 for

guidance when interpreting C.R.C.P. 55. *See Warne v. Hall*, 2016
CO 50, ¶ 12.

¶ 16    Numerous federal courts that have considered the question
presented here have held that "a defendant's default does not in
itself warrant the court in entering a default judgment." *Nishimatsu
Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.
1975). Instead, they reason that "[t]here must be a sufficient basis
in the pleadings for the judgment entered," because "[t]he defendant
is not held to admit facts that are not well-pleaded or to admit
conclusions of law." *Id.*; *see also Surtain v. Hamlin Terrace Found.*,
789 F.3d 1239, 1244-45 (11th Cir. 2015) (holding that the district
court did not err in sua sponte dismissing a claim after entry of
default because the plaintiff failed to provide a sufficient basis for
the judgment); *Marshall v. Baggett*, 616 F.3d 849, 852-53 (8th Cir.
2010) (concluding that although a court cannot disturb facts after
entry of default, "it is incumbent upon the district court to ensure
that 'the unchallenged facts constitute a legitimate cause of action'
prior to entering final judgment" because a defaulting party does
not admit conclusions of law (quoting *Murray v. Lene*, 595 F.3d 868,
871 (8th Cir. 2010))); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir.

8

2010) (holding that even if an entry of default was appropriate, a claim can be dismissed on the merits and that the district court properly denied the motion for default judgment).

¶ 17    The Ferraros do not cite, nor have we found, any authority that precludes a court from considering the sufficiency of a complaint sua sponte after entry of default, and we note that at least one court has recognized such authority. *See Surtain*, 789 F.3d at 1244-45. Moreover, Colorado permits such sua sponte consideration before the entry of default. *Schenck*, 719 P.2d at 1101-02. To conclude otherwise would allow baseless claims to proceed to final judgment. *See Marshall*, 616 F.3d at 852-53 (explaining that although facts are taken as true, "it is incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgement" (quoting *Murray*, 595 F.3d at 871)).

¶ 18    As well, the Ferraros do not cite any authority holding that an entry of default can never be altered. To the contrary, the plain language of C.R.C.P. 55 authorizes a court to set aside an entry of default for good cause.

¶ 19    We agree with the reasoning of these federal authorities and discern no error by the district court in sua sponte considering the legal sufficiency of the Ferraros' complaint after the entry of default. And because an entry of default is not a final order, we conclude that a complaint's legal insufficiency constitutes good cause, under C.R.C.P. 55(c), to set aside the default. Accordingly, we affirm the court's ruling denying the motion for default judgment and dismissing the case for failure to state a claim.

### III.   No Asbestos Inspection Duty

¶ 20    The Ferraros next contend that the district court erroneously found that homeowners of single-family dwellings have a duty to inspect for asbestos and that contractors do not. They assert that the court was bound by their expert, who opined that a contractor's standard of care requires asbestos inspection. We conclude that the 2001 amendments to the asbestos statutes and accompanying 2003 changes to the regulations did not create an inspection duty for single-family residences and, thus, neither homeowners nor contractors owe such a duty under the regulations. Next, we are not persuaded that the court was bound by the Ferraros' expert's opinion that the OSHA standards apply. Finally, because we see no

reason to depart from the holding in *Corcoran*, we reject the Ferraros' assertion that contractors have an inspection duty and affirm the court's dismissal of the case, albeit on different grounds.

## A. Standard of Review and Law

¶ 21 "To establish a claim of negligence, a plaintiff must show that the defendant owed him or her a legal duty of care, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Collard v. Vista Paving Corp.*, 2012 COA 208, ¶ 29. "If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail." *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002).

¶ 22 Whether a common law tort duty exists is a question of law we review de novo. *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶¶ 18-19. A duty is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984)).

¶ 23    Because "it is in the interest of the general public to control the exposure of the general public to friable asbestos," § 25-7-501, C.R.S. 2018, Colorado has adopted comprehensive asbestos control statutes.  §§ 25-7-501 to -511.6, C.R.S. 2018.  Their purpose is to ensure the public's health, safety, and welfare by regulating asbestos abatement procedures in areas of public access.  § 25-7-501(1).  The statute permits the air quality control commission to adopt regulations that enforce compliance with the national emission standards for hazardous air pollutants.  *Id.*

¶ 24    We review statutes and rules de novo.  *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010).  We apply the same rules of construction when interpreting regulations and statutes.  *Woolsey v. Colo. Dep't of Corr.*, 66 P.3d 151, 153 (Colo. App. 2002).  We look to the language of the regulation and analyze it according to its plain and ordinary meaning.  *Williams v. Colo. Dep't of Corr.*, 926 P.2d 110, 112 (Colo. App. 1996).  If that language is clear and unambiguous, we need not resort to other rules of construction.  *See Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo. 2000) (statutory interpretation).

12

## B.    Analysis

### 1.    Asbestos Regulations

¶ 25    In 2003, the Department of Public Health and Environment Regulations were amended to comply with a 2001 statutory change to include single-family residential dwellings.  Ch. 225, sec. 4, § 25-7-502, 2001 Colo. Sess. Laws 772 (adding "single-family residential dwelling" to "area of public access"); Dep't of Pub. Health & Env't Reg. 8, pt. B, § VII.C, 5 Code Colo. Regs. 1001-10 (explaining revision based on 2001 statutory change).  A single-family residential dwelling is

> any structure or portion of a structure whose primary use is for housing of one family. Residential portions of multi-unit dwellings such as apartment buildings, condominiums, duplexes and triplexes are also considered to be, for the purposes of this Regulation No. 8, single-family residential dwellings; common areas such as hallways, entryways, and boiler rooms are not single-family residential dwellings.

Dep't of Pub. Health & Env't Reg. 8, pt. B, § I.B.96, 5 Code Colo. Regs. 1001-10.

¶ 26    Other definitions relevant to our analysis are those for "facility" and "facility component."  A facility is "any institutional,

13

commercial, public, industrial, or residential structure, installation, or building (including any structure installation, or building containing condominiums or individual dwelling units operated as a residential cooperative, *but excluding residential buildings having four or fewer dwelling units*) . . . ." *Id.* at Reg. 8, pt. B, § I.B.45 (emphasis added). A facility component is "any part of a <u>facility</u>, including equipment." *Id.* at Reg. 8, pt. B, § I.B.46.

¶ 27    Part B, section III of the regulations, entitled "Abatement, Renovation and Demolition Projects," contains a subsection, III.A, concerning inspections. The district court relied on subsection III.A.1 to find the existence of a duty to inspect single-family residential dwellings. The regulation provides that

> [p]rior to any <u>renovation</u> or <u>demolition</u> which may disturb greater than the <u>trigger levels</u>[1] of material identified as a suspect <u>asbestos-containing material</u> pursuant to the <u>EPA</u> "Green Book", Managing Asbestos in Place, Appendix G (1990), the *facility component(s)* to be affected by the <u>renovation</u> or <u>demolition</u> shall be inspected to determine if abatement is required.

---

[1] With regard to single-family residential dwellings, trigger levels "are 50 linear feet on pipes, 32 square feet on other surfaces, or the volume equivalent of a 55-gallon drum." Dep't of Pub. Health & Env't Reg. 8, pt. B, § I.B.107.a, 5 Code Colo. Regs. 1001-10.

14

*Id.* at Reg. 8, pt. B, § III.A.1 (emphasis added).

¶ 28    Because a "facility component" excludes residential buildings having four or fewer dwelling units, we conclude that this regulation does not create an inspection duty for single-family residential dwellings. Thus, while the regulation creates an inspection duty for facility components, its plain language excludes single-family residences like the Ferraros' home, contrary to the district court's ruling.

¶ 29    This conclusion is consistent with the statutory scheme, which is designed to protect the general public from friable asbestos in public areas. § 25-7-501(1). While the General Assembly and the commission added single-family residential dwellings to the statute and regulations, they did so to provide homeowners with the same abatement protections provided to other residential and commercial property owners when the presence of asbestos is known. Dep't of Pub. Health & Env't Reg. 8, pt. D, § VII.C.1.a, 5 Code Colo. Regs. 1001-10. Importantly, once a single-family dwelling's homeowner knows of asbestos in the home, the regulations provide that owner with the ability to opt-out of the asbestos abatement requirements entirely. *Id.* at Reg. 8, pt. B, § III.E.2 ("An owner of a <u>single-family</u>

residential dwelling may opt-out of the area of public access requirements of this regulation for the abatement of asbestos-containing material in excess of trigger levels in that owner's primary residence by completing the opt-out form.").

¶ 30    Finally, we presume that the General Assembly and the commission were aware of *Corcoran*'s holding that contractors have no inspection duty when they passed the 2001 and 2003 amendments and, thus, we presume that their failure to specify such a duty for contractors was intentional. *See Colo. Ethics Watch v. Senate Majority Fund, LLC*, 275 P.3d 674, 683 (Colo. App. 2010) (explaining that the legislature "must be presumed to know the existing law at the time it amends or clarifies that law" (quoting *Alliance for Colorado's Families v. Gilbert*, 172 P.3d 964, 968 (Colo. App. 2007))), *aff'd*, 2012 CO 12.  Accordingly, we conclude that the district court erred in ruling that the amended regulations create an inspection duty for single-family residences.  Absent the existence of a duty, there was no need for the court to decide who owed the duty, so we do not further consider that portion of the court's analysis.

16

## 2. Expert Opinion

¶ 31 Alternatively, the Ferraros ask us to find a duty based on their expert's report and assert that the district court should have adopted their expert's opinion that the "standard of care is that contractors are to investigate for asbestos." We reject this alternative argument because this precise issue was considered and rejected by the division in *Corcoran*, and the amendments to the regulations do not change the vitality of *Corcoran* in this regard.

¶ 32 In *Corcoran*, the plaintiffs argued that because two experts opined that the asbestos regulations required abatement procedures to be followed, the district court was "bound by that evidence and required to rule" that the regulation applied. 854 P.2d at 1380. However, the division recognized that "[i]t is the trial court's responsibility to determine the law to be applied in any case, and the court is not bound by 'expert testimony' on the applicability of the law." *Id.*; *see Neher v. Neher*, 2015 COA 103, ¶ 61 (noting that even if expert testimony is undisputed, the trial court is not bound to accept it); *see also Hines v. Denver & Rio Grande W. R.R. Co.*, 829 P.2d 419, 421 (Colo. App. 1991) ("The question whether a defendant owes a plaintiff a duty to act to avoid injury is a question

17

of law to be determined by the court."). It held that the asbestos regulations did not establish a standard of care and, therefore, did not "govern[] the [duty] owed by these defendants to plaintiff." *Corcoran*, 854 P.2d at 1381.

¶ 33     We agree with this reasoning and conclude that although the Ferraros' expert opined that the standard of care for a drywall contractor includes a duty to test for asbestos, the district court was not bound by that conclusion. *See id.* at 1380 ("It is irrelevant whether that expert testimony regarding the legal question is uncontradicted.").

### 3.     *Corcoran*

¶ 34     Also alternatively, the Ferraros assert that the district court should have found a common law duty for contractors to inspect for asbestos, and they urge us to ignore the holding in *Corcoran*. We decline to do so.

¶ 35     In *Corcoran*, the plaintiff homeowner hired an architect to remodel his home and hired a general contractor to scrape off a popcorn ceiling and replace it with a smooth-textured one. 854 P.2d at 1378. During the work, a subcontractor said the ceiling might contain asbestos, and subsequent testing was positive for

18

asbestos.  *Id.*  The plaintiff stopped work, hired an asbestos abatement company, and hired a different general contractor to complete the work.  *Id.*  The plaintiff sued the architect and the original general contractors for negligence, breach of the agreement to do work in a workmanlike manner, and outrageous conduct.  *Id.* The trial court dismissed the plaintiff's claims after trial, concluding that "no standards or guidelines existed requiring defendants to inspect or investigate for asbestos and that, therefore, defendants did not owe a duty to plaintiff."  *Id.* at 1379.  A division of this court affirmed the dismissal.  *Id.* at 1379-80.  It held, based on statewide standards, that Colorado does not require contractors to inspect for asbestos before beginning work on a single-family home.  *Id.* at 1380.

¶ 36    At the time of this decision in 1993, the asbestos regulations did not include single-family dwellings.  Despite the General Assembly's addition of "single-family residential dwellings" to the definition of "area of public access" in 2001 and the commission's amendments to the regulations shortly thereafter, these changes did not contradict *Corcoran*'s holding or create an inspection duty for contractors.  Ch. 225, sec. 4, § 25-7-502, 2001 Colo. Sess. Laws

772; Dep't of Pub. Health & Env't Reg. 8, pt. D, § VII.C.1.a, 5 Code Colo. Regs. 1001-10 (discussing addition of single-family residential dwellings to the statute and regulations); Dep't of Pub. Health & Env't Reg. 8, pt. B, § III.A.1, 5 Code Colo. Regs. 1001-10 (excluding single-family dwellings from the inspection requirement). Thus, *Corcoran*'s holding — that there is no basis to impose a duty on contractors to inspect a single-family residence for asbestos — has been the law for more than twenty-six years. We discern no reason to depart from *Corcoran* and impose an inspection duty on either contractors or homeowners for single-family dwellings.

¶ 37 Finally, we reject the Ferraros' contention that the OSHA standards require asbestos testing; those standards govern the duty an employer owes to its employees, not the duty an independent contractor owes a homeowner. *See* 29 C.F.R. § 1926.1101(k)(2)(i), (k)(2)(ii) (2018) (requiring building and facility owners to determine whether asbestos-containing material exists and notify employers, employees, and tenants of asbestos-containing material).

## IV. Conclusion

¶ 38 The judgment is affirmed.

JUDGE FOX and JUDGE WELLING concur.

20