The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 24, 2024

**2024COA117**

**No. 23CA1415, J.B. v MKBS, LLC — Civil Procedure — Default — Co-Defendants — Entry of Default — Default Judgment — Relief from Judgment or Order — Excusable Neglect**

This case presents three novel issues concerning the application of C.R.C.P. 55(a) and 55(b) where one codefendant defaulted and a second codefendant did not default and prevailed at trial. The plaintiff's claims against both defendants arose from the allegation that the defaulting codefendant sexually assaulted the plaintiff's daughter. (The non-defaulting codefendant was the employer of the defaulting codefendant.)

First, the division analyzes whether, under these circumstances, the non-defaulting codefendant could call the defaulting codefendant to testify at trial regarding, among other issues, whether he sexually assaulted the victim. The majority holds that the non-defaulting codefendant may call the defaulting

codefendant to testify because the codefendant's default cannot restrict the non-defaulting codefendant's right to defend itself.

Second, the division considers whether the court erred by setting aside the default judgment entered against the defaulting codefendant after the jury at the non-defaulting codefendant's trial found that the defaulting codefendant did not commit the sexual assault. The majority concludes that the court did not err.

Third, the division considers whether, under these facts, the court erred by subsequently entering judgment in favor of the defaulting codefendant, rather than conducting a separate damages trial that would create the risk of the entry of inconsistent adjudications. The majority holds that the court did not err.

The dissent disagrees, concluding that the court erred by (1) allowing the defaulting codefendant to testify at the trial of the plaintiff's claims against the non-defaulting codefendant in a manner that contradicted the facts that he was deemed to have admitted by virtue of his default and (2) entering judgment in favor of the defaulted codefendant without the claims asserted against him ever having been tried to a jury.

Court of Appeals No. 23CA1415
City and County of Denver District Court No. 19CV30687
Honorable Martin F. Egelhoff, Judge
Honorable Marie Avery Moses, Judge

J.B., as legal guardian and personal representative of E.B., an adult with a disability,

Plaintiff-Appellant,

v.

MKBS, LLC d/b/a/ Metro Taxi, Inc. a/k/a Metro Transportation Planning and Solution Group and Jesus Manuel Ortiz,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE LIPINSKY
Freyre, J., concurs
Schutz, J., dissents

Announced October 24, 2024

Burg Simpson Eldredge Hersh & Jardine, P.C., D. Dean Batchelder, Jessica L. Breuer, Jessica B. Prochaska, Englewood, Colorado, for Plaintiff-Appellant

Harris, Karstaedt, Jamison & Powers, P.C., Jamey W. Jamison, Mark A. Sares, Dino G. Moncecchi, Englewood, Colorado, for Defendant-Appellee MKBS, LLC

Squire Patton Boggs (US) LLP, Keith Bradley, Denver, Colorado, for Defendant-Appellee Jesus Manuel Ortiz

¶ 1     Parties ignore litigation deadlines at their peril.  A defendant who, after being properly served with a summons and complaint, does not timely respond to the complaint faces the risk of a default judgment.

¶ 2     A plaintiff who seeks a default judgment must take two steps. First, the plaintiff must obtain a default under C.R.C.P. 55(a), known as a clerk's default.  A clerk's default documents that the defendant failed to respond to the plaintiff's complaint.  "The 'entry of default' accepts the complaint's allegations and establishes the defendant's liability, but it does not establish damages." *Ferraro v. Frias Drywall, LLC*, 2019 COA 123, ¶ 11, 451 P.3d 1255, 1259.

¶ 3     Second, the plaintiff must then move for entry of a default judgment under C.R.C.P. 55(b).  A court cannot enter a final default judgment until it has determined the amount of damages that the plaintiff is entitled to recover from the defaulting defendant.  Courts will generally conduct evidentiary hearings or trials to determine the damages awardable to the plaintiff against the defaulted defendant.

¶ 4     Both clerk's defaults and default judgments may be set aside. As we explain below, a defaulting defendant must show good cause

to set aside a clerk's default and may set aside a default judgment in accordance with C.R.C.P. 60(b).  C.R.C.P. 55(c).

¶ 5     This case presents three important issues concerning defaulting defendants that prior Colorado decisions have not addressed.

¶ 6     First, we decide whether, in a civil case involving multiple parties, arising from a single set of facts, a non-defaulting codefendant may call a defaulting codefendant to testify at trial, even though the defaulting codefendant's liability to the plaintiff was established under C.R.C.P. 55(a).  We hold that, under these circumstances, the non-defaulting codefendant has the right to call the defaulting codefendant to the witness stand because the default entered against the codefendant cannot restrict the non-defaulting codefendant's right to defend itself against the plaintiff's claims.

¶ 7     Second, we consider whether a court may set aside a default judgment entered against the defaulting codefendant when the jury's answers on a special verdict form at the trial against the non-defaulting codefendant establish that such defendant is not liable to the plaintiff and that the plaintiff incurred no damages as a result of the defaulting codefendant's actions.  We hold that a court

does not err by setting aside a default judgment that rests on facts directly contrary to the jury's findings at the trial against the non-defaulting codefendant.

¶ 8    Third, we hold that, under these facts, a court does not err by subsequently entering judgment in favor of the defaulting codefendant rather than conducting a separate damages trial that creates the risk of logically inconsistent adjudications entered in the same case.

¶ 9    We affirm.

## I.    Background Facts

¶ 10    E.B. is a visually impaired adult with reduced cognitive ability who uses a wheelchair.  J.B. is her parent, personal representative, and legal guardian.

¶ 11    E.B. attended a day program (the program) for people with neurological conditions and brain injuries.  For several years, Metro Taxi transported E.B. from her home to the program and back.  At the times relevant to this case, Jesus Ortiz was the employee of Metro Taxi who drove E.B.

¶ 12    J.B. alleged that, in February 2018, Ortiz sexually assaulted E.B. while taking her to the program.  According to J.B., as a result

of the sexual assault, E.B. suffered injuries, including post-traumatic stress disorder.

## II.    Procedural History

¶ 13    On February 20, 2019, J.B., acting on behalf of E.B., filed a single lawsuit, premised on the same factual allegations, against Metro Taxi and Ortiz.  J.B. pleaded claims against Metro Taxi for negligent hiring and retention, negligent supervision, negligence, negligent infliction of emotional distress, respondeat superior liability, and outrageous conduct.  J.B.'s claims against Ortiz arose under theories of intentional infliction of emotional distress, battery, assault, and outrageous conduct.  J.B. effected service on both defendants in April 2019.

¶ 14    Metro Taxi filed a timely answer, in which it denied J.B.'s claims.  Ortiz did not respond to J.B.'s complaint, however.

¶ 15    On June 7, 2019, the court granted J.B.'s motion for entry of a C.R.C.P. 55(a) clerk's default against Ortiz and ordered her to file a motion for default judgment against Ortiz within thirty-five days. But J.B.'s counsel did not move for a default judgment for more than two years.

¶ 16    Ortiz was charged with unlawful sexual contact based on J.B.'s allegations that he had sexually assaulted E.B.  A public defender represented Ortiz in his criminal case.  That case went to trial, and a jury acquitted Ortiz of the charge.

¶ 17    In the meantime, J.B.'s civil claims against Metro Taxi also proceeded to trial.  Before the trial, the court granted J.B.'s motion in limine to exclude evidence of Ortiz's acquittal in the criminal case.

¶ 18    At a pretrial conference, counsel for Metro Taxi said he intended to subpoena Ortiz to testify at trial.  In response, J.B.'s counsel filed a forthwith motion to preclude Ortiz from presenting testimony that would contradict the allegations against him in J.B.'s complaint because Ortiz was deemed to have admitted those allegations upon the entry of the clerk's default.  Specifically, J.B.'s counsel argued that she had "relied upon these admissions since the beginning of this case and these admissions must be considered binding."

¶ 19    The court denied the forthwith motion, noting that J.B.'s counsel did not provide any authority supporting her argument that Metro Taxi could not call Ortiz to testify regarding the facts

underlying J.B.'s claims against Metro Taxi. As the court explained, the upcoming trial concerned J.B.'s claims against Metro Taxi only, and not her claims against Ortiz. Thus, the court explained, the jury would be asked to determine "the underlying allegations of sexual assault *as [they] relate[] to [Metro Taxi]'s liability*." (Emphasis added.)

¶ 20 The jury trial began on August 23, 2021. During voir dire, a prospective juror told the court and counsel that he had heard Ortiz say in the hallway that he had not touched E.B. inappropriately. The court declared a mistrial.

¶ 21 Following the mistrial, J.B.'s counsel filed a motion for reconsideration of her forthwith motion, pointing to Ortiz's conduct in causing the mistrial as an example of the prejudice to J.B. and the risk of jury confusion if Ortiz were allowed to testify. J.B.'s counsel reiterated that Ortiz "should not now after being in default and [being deemed to have] admitt[ed] all allegations against him have the opportunity to defend himself, garner jury favor, and potentially lessen his apportionment of fault." The court denied the motion to reconsider.

¶ 22    The second trial of J.B.'s claims against Metro Taxi began on November 1, 2021. Testifying for Metro Taxi, Ortiz denied that he had sexually assaulted E.B. He further explained that he learned before the trial that he had defaulted and that Metro Taxi's lawyer did not represent him. Ortiz did not specify when he became aware of these facts and noted that he had his own attorney for another "event," meaning his criminal case. At a sidebar immediately following this testimony, the court said it "appreciate[d] [Ortiz's] efforts not to refer to the criminal case" and asked Ortiz to confirm that "[he] had a lawyer associated with [his] criminal case, not with respect to this civil case." Ortiz confirmed that the court's understanding was correct.

¶ 23    At the conclusion of the trial, the court instructed the jury that "entry of default establishes a defendant's liability and the allegations in the plaintiff's complaint concerning [Ortiz] are deemed admitted . . . . [E]ntry of default, however, is not an admission regarding damages." The instructions stated that "Ortiz is a defaulting defendant."

¶ 24    The jury found in Metro Taxi's favor. On a special verdict form, the jury indicated that, "with respect to all claims against

7

Metro Taxi," Ortiz did not sexually assault E.B., and E.B. did not "have injuries, damages, or losses from the [alleged] sexual assault." (Although J.B.'s counsel objected to the special verdict form that the court gave the jury, J.B.'s counsel proposed asking the jury whether E.B. "was sexually assaulted on February 26, 2018," and whether she had "injuries, damages, or losses from the sexual assault on February 26, 2018." Accordingly, J.B. knew that, at the conclusion of the trial of her claims against Metro Taxi, the jury could make express findings that Ortiz did not sexually assault E.B. and that E.B. suffered no damages from the claimed sexual assault.)

¶ 25 Following the trial, J.B.'s counsel filed a motion for entry of a default judgment against Ortiz pursuant to C.R.C.P. 55(b). On January 10, 2021, the court granted the motion and entered judgment against Ortiz in the amount of $698,929.81. (The court premised that figure on the testimony of J.B.'s damages expert at the trial of J.B.'s claims against Metro Taxi.)

¶ 26 Ortiz moved to set aside the default judgment on grounds of excusable neglect. He asserted that he "was led to believe that [Metro Taxi and he] were together in the defense" and that J.B.'s

counsel did not provide him with notice of her motion for entry of default judgment.

¶ 27     On April 6, 2022, the court granted Ortiz's motion to set aside the default judgment.  The court concluded, "[I]t was reasonable for Ortiz to believe that he was being represented by the same attorney as his co-defendant employer" — Metro Taxi — and that, "if the jury in this civil case . . . found that no assault had occurred, there would be no basis for entry of a judgment against him."  The court noted Ortiz's "considerable confusion as to the interplay between the criminal case and this civil case, including the role of his court appointed public defender."

¶ 28     J.B.'s counsel moved for reconsideration; the court denied the motion.

¶ 29     Ortiz subsequently moved for entry of judgment in his favor. Following a hearing conducted on June 28, 2023, the court entered judgment in Ortiz's favor based on the jury verdict in Metro Taxi's favor, nunc pro tunc to November 5, 2021.  The court reasoned that the jury's findings on the special verdict form that Ortiz did not sexually assault E.B. and that E.B. "sustained no injuries, damages or losses, fully resolve[d] all claims as to . . . Ortiz, inasmuch as an

essential element of each asserted claim for relief is a determination of damages."

¶ 30    J.B. appeals.

### III.    Analysis

¶ 31    J.B. contends that the court reversibly erred by

> (1)    permitting Ortiz to testify at Metro Taxi's jury trial;
>
> (2)    setting aside the default judgment entered against Ortiz; and
>
> (3)    entering judgment in Ortiz's favor.

#### A.    The Court's Ruling that Metro Taxi Could Call Ortiz as a Fact Witness at the Trial of J.B.'s Claims Against Metro Taxi

¶ 32    J.B. challenges the court's decision to allow Ortiz to testify at Metro Taxi's jury trial.  We disagree.

##### 1.    Preservation and Standard of Review

¶ 33    Metro Taxi argues that J.B. did not preserve this issue because, while she presents a CRE 403 argument on appeal, the trial court did not consider that rule in deciding that Ortiz could testify.  It further asserts that the issue is not preserved because J.B.'s counsel did not object at trial to Ortiz's testimony, although

Metro Taxi acknowledges that J.B.'s counsel filed a pretrial motion "to exclude Ortiz's testimony wholesale."

¶ 34     We conclude that J.B. preserved her challenge to Ortiz's testimony at the trial of her claims against Metro Taxi.  The filing of J.B.'s forthwith motion, in which her counsel argued that she would be unfairly prejudiced if the court permitted Ortiz to testify, was sufficient to preserve her opposition to Ortiz's trial testimony.  *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) ("[T]o preserve the issue for appeal[,] all that [i]s needed [i]s that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it."); *see also Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325-26 (Colo. 2009) ("[E]ven if an objection does not specifically identify the rule underlying the objection, it may nonetheless be sufficient to preserve an issue for appeal . . . .").

¶ 35     We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.  *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010).  "A trial court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair, or it misapplies the

11

law." *HMLL LLC v. MJM Holdings Ltd.*, 2024 COA 85, ¶ 17, ___ P.3d ___, ___.

¶ 36    Because the admissibility of Ortiz's testimony involves a question of law, we review the issue de novo. *See Dickinson v. Lincoln Bldg. Corp.*, 2015 COA 170M, ¶ 21, 378 P.3d 797, 804 ("Here, we assess the legal role of comparative negligence and pro rata liability in the damages phase of default proceedings. Because this assessment raises a novel question of law, we review de novo the district court's decision to exclude any evidence of comparative fault . . . .").

### 2.    The Court Did Not Abuse its Discretion by Permitting Ortiz to Testify at Metro Taxi's Trial

¶ 37    The court did not err by allowing Metro Taxi to call Ortiz as a witness at trial for two reasons.

¶ 38    First, as Metro Taxi argues, Ortiz's testimony was relevant to the central question at trial: whether Metro Taxi was liable to J.B. If the jury did not believe that Ortiz sexually assaulted E.B. or that E.B. suffered any injuries as a consequence of such alleged sexual assault, Metro Taxi could not be held liable to J.B. Only two people were present at the time of the alleged sexual assault — Ortiz and

E.B.  Because of her physical condition, E.B. could not testify.  That left Ortiz as the only eyewitness of what occurred between him and E.B. at the time of the alleged sexual assault.

¶ 39    Metro Taxi's ability to defend itself against J.B.'s claims would have been materially prejudiced if the court had not allowed it to call Ortiz to the witness stand.  As Metro Taxi emphasizes, it was the sole defendant at trial.  Metro Taxi asserts in its answer brief that the "trial was not against . . . Ortiz, but was limited in scope as solely against the *non-defaulting defendant*, Metro Taxi."  J.B. concedes that the court had no basis for sanctioning Metro Taxi by limiting the evidence it would introduce at trial.  Metro Taxi complied with the rules of civil procedure and did not miss any pretrial deadline.

¶ 40    We respectfully disagree with the dissent's suggestion that "enforcing the default against Ortiz" by barring him from testifying at the trial of J.B.'s claims against Metro Taxi would not have "deprived Metro Taxi of a meaningful opportunity to defend the claims asserted against it."  *Infra* ¶ 102.  We acknowledge that, as the dissent correctly notes, Metro Taxi and Ortiz could not be held jointly and severally liable and that Metro Taxi could only be found

liable for the percentage of fault that its alleged wrongful conduct contributed to E.B.'s damages, if she incurred any. Further, as the dissent accurately observes, J.B. asserted claims against Metro Taxi that she could not plead against Ortiz, including claims for negligent supervision and negligent retention. These true statements, however, lose sight of the big picture: Metro Taxi, which did not default and played by the rules, had the right to present its strongest defense at trial. There is no hint in the record, and J.B. does not contend, that Metro Taxi was in any way responsible for Ortiz's default.

¶ 41 The dissent's statement that, to "preserve[] the legal impact of Ortiz's default," the jury could have found Metro Taxi not liable "without resolving the question of whether a sexual assault occurred," *infra* ¶¶ 99, 101, suggests that the court would not have erred by barring Metro Taxi from calling Ortiz to testify at trial. But forcing Metro Taxi to rest its case on its defenses to J.B.'s negligence claims would have deprived Metro Taxi of what was undoubtedly its strongest defense: that no sexual assault occurred. If the jury believed — as it did believe — that there was no sexual assault, Metro Taxi would have won the case even if the jury

14

rejected its defenses to J.B.'s negligence theories. Accordingly, Metro Taxi could have prevailed at trial based solely on Ortiz's testimony that he did not sexually assault E.B. The fact that Ortiz was in default at the time of his trial testimony was of no consequence to Metro Taxi's right to present its most persuasive defense at trial.

¶ 42 In sum, the dissent would bar Metro Taxi, a party that followed the rules, from presenting its strongest evidence to the jury. We are unaware of any case, from any jurisdiction, that would, in effect, impose sanctions against such a party solely because its key witness had not complied with the rules.

¶ 43 Further, J.B. does not present a persuasive argument that the probative value of Ortiz's testimony was "substantially outweighed by the danger of unfair prejudice" to her, and, thus, the testimony was inadmissible under CRE 403. As Ortiz argues, the only conceivable prejudice to J.B. was the "legitimate probative force of the evidence" against her allegations. *People v. Kembel*, 2023 CO 5, ¶ 53, 524 P.3d 18, 29 (quoting *People v. Gibbens*, 905 P.2d 604, 608 (Colo. 1995)); *see also People v. Dist. Ct.*, 785 P.2d 141, 147 (Colo.

1990) ("[E]vidence [is not] unfairly prejudicial simply because it damages the [opponent's] case.").

¶ 44 Second, J.B.'s counsel does not cite any authority supporting J.B.'s contention that the court abused its discretion by allowing Metro Taxi to call Ortiz to the witness stand. Rather, J.B.'s counsel rests the abuse of discretion argument on an inapposite case, *Dickinson v. Lincoln Building Corp.*, 2015 COA 170M, 378 P.3d 797. *Dickinson* concerned defaulted defendants who, at a hearing on the *amount* of the judgment to which the plaintiff was entitled, sought to assert affirmative defenses to challenge their *liability* to the plaintiff. *See id.* at ¶ 27, 378 P.3d at 804. The division held that the defendants could not challenge their liability at the damages hearing because they had already defaulted. As the division explained, "A damages hearing is only held to determine the amount of damages owed, and any discussion of the liability underlying that award is prohibited." *Id.* at ¶ 28, 378 P.3d at 805. To permit otherwise "would weaken the efficacy and purpose of default" as "[i]t would allow a defaulted party to maintain a defensive posture on liability as though default had never occurred." *Id.* at ¶ 29, 378 P.3d at 805.

16

¶ 45     The circumstances in *Dickinson* are materially different from those in this case.  Unlike the defendants' attempt to contest their liability in *Dickinson*, at Metro Taxi's trial, Ortiz neither testified in his capacity as a codefendant nor challenged his own liability to J.B.  He did not argue at trial that the court should set aside the default entered against him or challenge the jury instruction that he was deemed liable for the sexual assault by virtue of his default.  The critical point is that Ortiz testified as a witness for Metro Taxi — a non-defaulting codefendant that subpoenaed him to testify.

¶ 46     Under the circumstances, Ortiz's default could not deprive Metro Taxi of the ability to introduce critical evidence in its defense against J.B.'s liability claims *against Metro Taxi*.  J.B. concedes that Ortiz's default did not bind Metro Taxi: "Metro Taxi was certainly permitted to challenge whether the sexual assault had occurred, since *it* was not in default."  Ortiz's testimony at Metro Taxi's trial solely related to the issue of *Metro Taxi's* liability.

¶ 47     J.B. acknowledges that *Dickinson* is distinguishable because "there are competing needs in a jury trial that may not be present in a damages hearing."  One "competing need" is Metro Taxi's right to

17

defend itself against J.B.'s allegations by relying on relevant evidence. Moreover, a further competing need is ensuring that the truth-seeking function of our legal system is not thwarted because the trier of fact is denied material evidence at trial. *See Warembourg v. Excel Elec., Inc.*, 2020 COA 103, ¶ 1, 471 P.3d 1213, 1217.

¶ 48 In sum, the court did not abuse its discretion by allowing Metro Taxi to call Ortiz as a witness.

### B. The Order Setting Aside the Default Judgment Entered Against Ortiz

¶ 49 J.B. challenges the court's order setting aside the default judgment entered against Ortiz. We disagree.

#### 1. Standard of Review

¶ 50 "[A] trial court's order setting aside a default judgment will not be disturbed unless the record reflects a clear abuse of discretion." *McMichael v. Encompass PAHS Rehab. Hosp., LLC*, 2023 CO 2, ¶ 12, 522 P.3d 713, 719.

#### 2. The Law Governing Setting Aside a Default Judgment

¶ 51 "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may

18

likewise set it aside in accordance with Rule 60(b)."  C.R.C.P. 55(c).

C.R.C.P. 60(b)(1) says that "the court may relieve a party or his legal

representative from a final judgment, order, or proceeding" for, as

relevant here, "inadvertence, surprise, or excusable neglect."

¶ 52     When determining whether to relieve a party from a default

judgment under C.R.C.P. 60(b), a court must ask "(1) whether the

neglect that resulted in entry of judgment by default was excusable;

(2) whether the moving party has alleged a meritorious claim or

defense; and (3) whether relief from the challenged order would be

consistent with considerations of equity."  *McMichael*, ¶ 13, 522

P.3d at 719 (quoting *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d

1112, 1116 (Colo. 1986)).

¶ 53     The "first factor looks to the *cause* of the neglect."  *Goodman*

*Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 319 (Colo.

2010) (emphasis added).  "A party's conduct constitutes excusable

neglect" for purposes of setting aside a default judgment "when the

surrounding circumstances would cause a reasonably careful

person similarly to neglect a duty."  *Id.* (quoting *In re Weisbard*, 25

P.3d 24, 26 (Colo. 2001)).  The court applies an objective test in

determining excusable neglect.  *See Tyler v. Adams Cnty. Dep't of*

*Soc. Servs.*, 697 P.2d 29, 32 (Colo. 1985). The second factor focuses on the merits of the defaulting defendant's defense. *See Goodman*, 222 P.3d at 319. The third factor "addresses the circumstances surrounding the neglect and the motion to set aside" the default judgment. *Id.*

¶ 54     "[T]hese three factors constitute a balancing test and each must be considered in resolving the motion." *Id.* at 321. A court's consideration of the three factors must be guided by the general rule that motions to set aside default judgments "should be liberally construed in favor of the movant, especially where the motion has been promptly made." *Craig v. Rider*, 651 P.2d 397, 402 (Colo. 1982); *see also Goodman*, 222 P.3d at 322.

¶ 55     A defaulting defendant bears the burden of showing by clear and convincing evidence that the default judgment should be set aside. *McMichael*, ¶ 13, 522 P.3d at 719.

### 3. The Court Did Not Abuse its Discretion by Setting Aside the Default Judgment Against Ortiz

¶ 56     The court did not abuse its discretion by setting aside the default judgment entered against Ortiz because it properly considered the three C.R.C.P. 60(b) factors.

¶ 57    First, the court found that Ortiz's "failure to participate in these proceedings was the result of excusable neglect," as it was "a reasonable assumption" for Ortiz to assume that Metro Taxi's counsel would represent him, as well as Metro Taxi. As the court noted, "the assault was alleged to have occurred during his employment" by Metro Taxi; Ortiz was a defendant in a criminal case arising from the alleged incident involving E.B.; a public defender represented him in that case; and he was acquitted.

¶ 58    Second, the court found that Ortiz "asserted a meritorious defense, namely that he did not assault [E.B.]." The court noted that the jury acquitted Ortiz in the criminal case and that, at the trial of J.B.'s claims against Metro Taxi, the jury found that "Ortiz did not assault [E.B.]" and that E.B. did not "have injuries, damages, or losses from the [alleged] sexual assault."

¶ 59    The dissent is technically correct that "J.B.'s claims against Ortiz were never tried or adjudicated." *Infra* ¶ 114. But at the trial of J.B.'s claims against Metro Taxi, J.B. had a full opportunity to litigate the most fundamental fact underlying J.B.'s claim against Ortiz — whether Ortiz sexually assaulted E.B. After hearing J.B.'s

evidence, the jury rejected the evidence supporting her assertion that E.B. was sexually assaulted.

¶ 60    Third, while the considerations of equity included the significant expense that J.B. would incur at a trial on the merits of her claims against Ortiz, the court found that those considerations were secondary to other factors.  Those factors included Ortiz's filing of his motion to set aside "only three weeks after entry of the Default Judgment" and that, although Ortiz's "ongoing confusion as to the differences and significances of the different legal proceedings" caused a mistrial, "when Ortiz understands what is required of him, he attempts to comply with the instructions he has been given."

¶ 61    J.B. contends that, in analyzing the first C.R.C.P. 60(b) factor — excusable neglect — the court erroneously focused on Ortiz's subjective understanding of whether Metro Taxi's lawyers also represented him and disregarded the case law holding that a pro se litigant must comply with the rules of civil procedure. (Although Ortiz argues that J.B. "forfeited this issue" by not mentioning it in her opposition to Ortiz's motion to set aside the default judgment or in counsel for J.B.'s motion for reconsideration,

J.B. preserved this argument by generally challenging the court's finding of excusable neglect. *See Taylor v. HCA-HealthONE LLC*, 2018 COA 29, ¶ 50, 417 P.3d 943, 951 (holding that, while a more specific reference "would have been helpful, it was not necessary" where the defendant "fairly presented the issue to the district court: she filed a Rule 60(b) motion to set aside a judgment entered without consideration of the merits on the basis of excusable neglect").)

¶ 62     Contrary to J.B.'s argument, the court expressly found that it was reasonable for Ortiz to assume that Metro Taxi's lawyers were representing him because J.B.'s claims arose from Ortiz's alleged conduct while employed by Metro Taxi. Although the court did not expressly say whether it was applying an objective or a subjective test in deciding whether Ortiz's failure to respond to J.B.'s complaint was reasonable, we interpret the court's language as meaning that a reasonable person similarly situated to Ortiz would have believed that his employer's counsel represented him in the civil case.

¶ 63     Significantly, the court reminded the parties that it had presided over the trial of J.B.'s claims against Metro Taxi, at which

23

it observed Ortiz's testimony about "his understanding regarding the default that had been entered against him and his understanding of whether he was represented by an attorney (including the attorney for [Metro Taxi]) in this civil action." The court credited Ortiz's claim that he thought that Metro Taxi's lawyers represented him "because the assault was alleged to have occurred during his employment."

¶ 64    For these reasons, the court correctly objectively assessed whether "the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty." *Weisbard*, 25 P.3d at 26 (quoting *Tyler*, 697 P.2d at 32).

¶ 65    The court, therefore, set aside the default judgment only after thoroughly considering the "cause of the neglect." *Goodman*, 222 P.3d at 319, 322. The court's detailed explanation for its determination that Ortiz established excusable neglect demonstrates why appellate "[r]eview of a trial court's order setting aside a default judgment is deferential." *McMichael*, ¶¶ 10, 12, 522 P.3d at 718-19 ("[W]e emphasize that weighing the relevant factors for relief pursuant to C.R.C.P. 60(b)(1) remains within the province of the trial court."). Accordingly, we hold that the court did not

24

abuse its discretion by determining that Ortiz established excusable neglect to set aside the default judgment.

¶ 66    J.B. "does not contest that Ortiz could meet" the second factor — that he had a meritorious defense — given his testimony and the jury's findings on the special verdict form at the trial against Metro Taxi.

¶ 67    The parties dispute whether Ortiz established the third factor of the C.R.C.P. 60(b) analysis — that setting aside the default would be consistent with considerations of equity.  J.B. argues that the court did not give sufficient weight to her reliance on "the effect of Ortiz's failure to appear, including the deemed admission of allegations in the complaint" as a consequence of the entry of the clerk's default against him.

¶ 68    In assessing a C.R.C.P. 60(b)(1) motion to set aside a default judgment, we look to the C.R.C.P. 55(b) *judgment* and not to the C.R.C.P. 55(a) *clerk's default.  See* C.R.C.P. 60(b) ("[T]he court may relieve a party or his legal representative from a *final judgment,* order, or proceeding . . . .") (emphasis added).  Therefore, in deciding whether the default judgment against Ortiz should be set aside, the court correctly considered J.B.'s alleged reliance on the

*default judgment* entered in 2021, after the trial on J.B.'s claims against Metro Taxi, and not her alleged reliance on the *clerk's default* entered in 2019.

¶ 69 In addition, when assessing whether a defaulting defendant promptly moved to set aside the default judgment, *see Craig*, 651 P.2d at 403-05, we determine promptness from the date on which the court entered the default judgment, *see* C.R.C.P. 60(b) (A motion to set aside a judgment on grounds of excusable neglect "shall be made within a reasonable time, and . . . not more than 182 days after the judgment . . . was entered . . . ."). As the court noted, Ortiz filed his motion to set aside the default judgment "only three weeks" following entry of the default judgment. Thus, counsel for J.B.'s assertion that "[i]t was years since he should have answered," referring to the June 7, 2019, date of the clerk's default, is incorrect.

¶ 70 For these reasons, we perceive no abuse of discretion in the court's decision to set aside the default judgment against Ortiz. *See CF & I Steel Corp. v. Robb*, 533 P.2d 491, 494 (Colo. 1975) (Where the motion to set aside the default judgment "has been promptly made and a prima facie meritorious defense is shown," the supreme

court has not hesitated to conclude that the court abused its discretion by refusing to set aside the default judgment, "particularly in cases where the defendant had no actual notice of the suit, or of the trial." (quoting *F & S Constr. Co. v. Christlieb*, 441 P.2d 656, 657 (Colo. 1968))).

C.    The Entry of Judgment in Ortiz's Favor

¶ 71    We also disagree with J.B.'s argument that the court reversibly erred by entering judgment in Ortiz's favor.

1.    Standard of Review

¶ 72    Neither the court nor the parties cite to a case squarely addressing the standard of review we should apply when considering a trial court's entry of judgment in favor of a defaulting codefendant following a jury's verdict in favor of a non-defaulting codefendant.  We conclude that the appropriate standard is de novo review, as the court determined that Ortiz was entitled to judgment in his favor as a matter of law to avoid inconsistent adjudications. *See Salomon Smith Barney, Inc. v. Schroeder*, 43 P.3d 715, 716-17 (Colo. App. 2001) (applying the United States Supreme Court's holding in *Frow v. De La Vega*, 82 U.S. 552, 554 (1872), in deciding that a default judgment could not be entered against a defaulting

27

codefendant until the liability of the non-defaulting codefendant had been adjudicated, where the liability of the former depended on the liability of the latter).

## 2. The Court Did Not Err by Entering Judgment in Ortiz's Favor

¶ 73    At the hearing at which the court and counsel discussed how the case should proceed after the court set aside the default judgment against Ortiz, the court observed that it was "obligated to give effect to the jury's verdict. And at that point in time, the issue for Mr. Ortiz wasn't liability; it was damages. . . . Ortiz was entitled to have some determination with respect to damages" before the court entered a default judgment against him. The court explained that entry of a money judgment against Ortiz would be inconsistent with the jury's finding that E.B. had suffered no injuries or damages as a consequence of the alleged sexual assault.

¶ 74    J.B.'s counsel argued that the jury's findings pertained to Metro Taxi only and that the court should not consider those findings when determining the amount of damages that Ortiz should be required to pay to J.B. In response to this argument, the court underscored that all of J.B.'s claims against Metro Taxi rested on her allegation that Ortiz had sexually assaulted E.B. The court

reiterated that the jury had expressly found that no sexual assault had occurred.

¶ 75    Like its statements at the hearing, the court's order entering judgment in favor of Ortiz was well reasoned. The court explained:

- At Metro Taxi's trial, the court instructed the jury that J.B. "was required to prove the nature and extent of her damages, and to determine the total dollar amount caused by the negligence, 'if any,'" of Metro Taxi and "by the fault" of Ortiz.

- On the special verdict form, the jury expressly found that E.B. had no injuries, damages, or losses from the sexual assault.

- The sole issue outstanding as to Ortiz at the time of trial was the determination of the amount of damages he owed in light of the entry of the clerk's default against him.

- "Giving maximum effect to the jury's verdict, the determination that [E.B.] sustained no injuries, damages or losses . . . fully resolves all claims as to . . . Ortiz, inasmuch as an essential element of each asserted claim for relief is a determination of damages."

¶ 76    We hold that the court did not abuse its discretion by entering judgment in favor of Ortiz.  The court painstakingly avoided entering logically inconsistent judgments: One predicated on the jury's finding that Ortiz did not sexually assault E.B. and that E.B. suffered no damages from any such sexual assault, and a second predicated on the presumptions that Ortiz did sexually assault her and that she suffered damages as a result.

¶ 77    "Inconsistent default judgments, like inconsistent judgments more generally, are strongly disfavored.  When a case involves multiple defendants, courts may not grant default judgment against one defendant if doing so would conflict with the position taken by another defendant." *Escalante v. Lidge*, 34 F.4th 486, 495 (5th Cir. 2022).

¶ 78    Following this reasoning, a court should enter judgment in favor of a defaulting codefendant when a judgment *against* that defendant would directly conflict with the jury verdict entered at the conclusion of the trial of the plaintiff's claims against a non-defaulting codefendant.  *See Schenck v. Van Ningen*, 719 P.2d 1100, 1102 (Colo. App. 1986) (holding that the trial court did not err by dismissing the plaintiff's suit against a defaulting codefendant

30

where the court had previously entered summary judgment in favor of the non-defaulting codefendant, noting, "It would be inconsistent to enter judgment against the [defaulting codefendant] after having held the same facts do not state a claim for relief against the [non-defaulting codefendant]").

¶ 79    As the United States Supreme Court advised in *Frow*, when a case involves multiple defendants and one has defaulted, the court should "simply . . . enter a default" against the defaulting defendant "and proceed with the cause upon the answers *of the other defendant*[]."  82 U.S. at 554 (emphasis added).  The Supreme Court explained,

> [I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike — the defaulter as well as the others.  If it be decided in the complainant's favor, he will then be entitled to a final decree against all.  But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

*Id.*; *see also Salomon Smith Barney, Inc.*, 43 P.3d at 716-17 (applying *Frow* and holding that, although a defaulting defendant could not "participate further in the proceedings," such defendant

31

"would be entitled to the benefit of any favorable judgment" entered on the plaintiff's claims against the non-defaulting defendants). "[I]f *Frow* still stands for anything, it explicates a cautionary warning to the courts: logically inconsistent judgments resulting from an answering defendant's success on the merits and another defendant's suffering of a default judgment are to be avoided." *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434 (E.D. Va. 2006).

¶ 80 The Second Circuit described the proper procedure under such circumstances in *Henry v. Oluwole*, 108 F.4th 45 (2d Cir. 2024), which involved facts remarkably similar to those presented here. The plaintiff, Henry, asserted multiple claims against an individual defendant, Oluwole, and his employer, Bristol Hospital, predicated on her allegation that Oluwole sexually assaulted her when he was employed at Bristol Hospital. *See id.* at 48. "Oluwole did not initially appear, and the district court entered a default judgment against him as to liability but not as to damages." *Id.*

¶ 81 Henry's case against Bristol Hospital then proceeded to trial. Bristol Hospital called Oluwole as a witness. Oluwole testified that his encounter with Henry had been consensual. *Id.* at 50.

32

¶ 82    The jury returned a verdict in favor of Bristol, "finding that Henry had failed to prove that Oluwole sexually assaulted . . . her." *Id.* at 48. Following the trial, the district court vacated the default judgment as to Henry's assault and battery claims because "allowing [those claims] to stand would result in the entry of 'logically inconsistent judgments' in contravention of *Frow*." *Id.* at 48-49 (quoting *Henry v. Bristol Hosp., Inc.*, No. 13-CV-00826, 2020 WL 7773418, at *4 (D. Conn. Dec. 30, 2020) (unpublished order)). Oluwole then moved to set aside the default judgment on Henry's remaining claims against him, arguing that maintaining them would also result in logically inconsistent judgments. The district court denied his motion. *Id.*

¶ 83    The Second Circuit reversed, holding that "the *Frow* principle, which prohibits a default judgment that is inconsistent with a judgment on the merits, required vacatur of the entire default judgment because all of Henry's claims against Oluwole are inconsistent with the jury verdict in favor of Bristol." *Id.* at 53-54. The Second Circuit noted that "the defaulting party, Oluwole, even testified at the trial of the non-defaulting co-defendant, Bristol, the liability of which was entirely derivative of Oluwole's own." *Id.* at

33

54. "Henry had the same opportunity to examine and to challenge Oluwole's version of the sexual encounter at the trial against Bristol that she would have had at a trial against Oluwole." *Id.*

¶ 84 The Second Circuit further observed that setting aside the default judgment would not prejudice Henry, as she had already incurred significant litigation expenses in her case against Bristol Hospital, *see id.* at 52, and she "would have incurred the same costs had Oluwole timely answered her complaint," *id.* at 53. The court's reasoning in *Henry* reinforces our holding in this case regarding the judgment entered in favor of Ortiz. A court cannot, in the same case, enter an adjudication that a defaulting defendant did not commit a sexual assault and that the alleged victim suffered no damages as a result of any such sexual assault and an adjudication that the defendant committed a sexual assault and that the alleged victim suffered damages as a result. This type of nonsensical outcome would not only defy logic, but it would undermine confidence in our legal system.

¶ 85 J.B. argues that it would be inconsistent to "complete[ly] revers[e]" the entry of the default judgment against Ortiz by setting that judgment aside. But there is no inconsistency when a court

34

enters a judgment in favor of a defaulting codefendant to avoid an adjudication that directly contradicts the jury's findings at the trial of the plaintiff's claims against a non-defaulting codefendant. *See id.* at 53-54; *Frow,* 82 U.S. at 554; *Escalante,* 34 F.4th at 495.

¶ 86　　　Lastly, J.B. contends that the court provided no explanation for reversing the default judgment. The record refutes J.B.'s argument. The court explained in detail why the court previously erred by entering the default judgment:

> [W]hat should have happened is that at the time of the verdict, [the court] should have given maximum effect to the verdict . . . [and] entered judgment based upon those findings. That didn't happen. . . . I think *there was an error that occurred in not entering the judgment at that time. It's an error [that] can be cured by me issuing an order to that effect, nunc pro tunc, to the date of the verdict,* which is what I'm going to do. And I've articulated my rationale for that.

(Emphasis added.) *Cf. S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC,* 2019 COA 58, ¶ 46, 442 P.3d 1012, 1020 (holding that the district court abused its discretion where "the second order did not mention the first order, much less give any reason for reaching the opposite result").

35

¶ 87    In sum, the court did not err by entering judgment in Ortiz's favor, consistent with the jury's findings at the conclusion of the trial of J.B.'s claims against Metro Taxi.

## IV.    Costs

¶ 88    J.B. requests that we set aside the court's award of costs to Ortiz.  In light of our disposition of J.B.'s contentions, there is no basis for reversing the cost award.

## V.    Disposition

¶ 89    The judgment is affirmed.

JUDGE FREYRE concurs.

JUDGE SCHUTZ dissents.

JUDGE SCHUTZ, dissenting.

¶ 90 The procedural context of this case requires us to make difficult choices balancing the tension between the desire for entering consistent judgments, holding defaulted parties accountable, and ensuring parties an opportunity to pursue their claims. The majority concludes that these principles require the entry of a judgment in favor of a defaulting defendant even though the plaintiff was never afforded the opportunity to pursue their claim for damages against that party.

¶ 91 The majority relies upon the Supreme Court's opinion in *Frow v. De La Vega*, 82 U.S. 552 (1872), in support of its opinion. The majority reasons that its application of *Frow* prevents irrational inconsistent judgments, allows a non-defaulting codefendant the full opportunity to litigate their defense, and provides accountability for those who fail to comply with litigation deadlines.

¶ 92 In contrast, I conclude that the majority opinion reaches an outcome that runs counter to the foundational principles it intends to promote by endorsing a process that creates illogical results, rewarding a defendant who failed to comply with litigation

deadlines, and depriving a plaintiff of their opportunity to try their claims against the defaulted defendant.

## I. Additional Facts and Procedural Context

¶ 93 The majority thoroughly and aptly describes the factual circumstances that gave rise to this litigation and the procedural machinations that followed. Without repeating that history, the following points are central to my analysis:

- E.B. claims that she was sexually assaulted by Jesus Ortiz while Ortiz was transporting her in a taxi owned by his employer, MKBS, Inc. d/b/a Metro Taxi, Inc. (Metro Taxi). E.B. brought this suit through her legal guardian, J.B.

- Ortiz failed to timely answer the complaint.

- The court entered a clerk's default against Ortiz in June 2019 and directed J.B.'s counsel to file a motion for entry of default judgment within thirty-five days. J.B.'s counsel failed to meet that deadline.

- Metro Taxi timely filed its answer.

- J.B.'s claims against Metro Taxi proceeded to a jury trial in November 2021. Over the objection of J.B.'s counsel,

38

the trial court permitted Ortiz to testify at the trial and deny that he assaulted E.B., a fact that was deemed admitted as a matter of law by virtue of Ortiz's default. *See Suydam v. LFI Fort Pierce, Inc.*, 2020 COA 144M, ¶ 46 ("[A]n entry of default establishes a party's liability [and] [t]he allegations in the plaintiff's complaint [concerning the defaulting party] are also deemed admitted." (quoting *Dickinson v. Lincoln Bldg. Corp.*, 2015 COA 170M, ¶ 22)); *Ferraro v. Frias Drywall, LLC*, 2019 COA 123, ¶ 11 ("The 'entry of default' accepts the complaint's allegations and establishes the defendant's liability . . . ." (quoting *Dickinson*, ¶ 22)).

- At trial, the court instructed the jury that "[b]ecause . . . Ortiz has not participated in this case, the [c]ourt has found him liable to [J.B.] and a cause of her damages, if any."

- The court's jury instructions and verdict form did not contain any claim for relief against Ortiz.

39

- Based largely on Ortiz's testimony at trial denying the assault, the jury answered the first two interrogatories on the verdict form as follows:

  > 1. Do you find that [E.B.] was sexually assaulted by Ortiz . . . ?  (Yes or No)
  >
  > ANSWER: No.
  >
  > 2. Did [E.B.] have injuries, damages, or losses from the sexual assault . . . ?
  >
  > ANSWER: No.[1]

- Based on the jury's answers to these interrogatories, the court entered judgment against J.B. on her claims against Metro Taxi.  No judgment was entered for or against Ortiz.

- After the jury trial, J.B.'s counsel moved for the entry of a default judgment against Ortiz.  Ortiz did not respond to the motion.

---

[1] It should be noted that the jury's answer to the first interrogatory — that no assault occurred — dictated its answer to the second.  This is so because, if no assault occurred, it necessarily follows that no damages could have been caused by such nonoccurrence.

- Based on the evidence of damages J.B. submitted to the jury at the Metro Taxi trial, the trial court entered a default judgment against Ortiz in the amount of approximately $700,000.

- Three weeks later, Ortiz moved to set aside the default judgment.

- The trial court granted the motion and set aside the clerk's default and the default judgment. The court then set the matter for a case management conference.

- At the conference, and after argument from counsel, a different district court judge ruled that the jury's answers to the special interrogatories precluded J.B. from pursuing the claims against Ortiz and entered judgment in favor of Ortiz and against J.B.

- J.B. appeals the entry of judgment against her on her claims against both Metro Taxi and Ortiz.

## II. Analysis

¶ 94 As a starting point, I respectfully disagree with the majority's partial application of the *Frow* principles to the circumstances of this case.

41

## A. The Limits of Frow

¶ 95 In *Frow*, De La Vega alleged that multiple defendants had defrauded him of a parcel of land. 82 U.S. at 552-53.[2] Frow failed to timely answer the complaint, and the trial court entered a judgment against him awarding the property to De La Vega. *Id.* Frow appealed. While the appeal was pending, a trial was held against the defendants who had not defaulted. *Id.* That trial ended in a judgment in favor of the non-defaulting defendants. *Id.*

¶ 96 In resolving the appeal against De La Vega, the Supreme Court disapproved of the trial court's entry of a final judgment against Frow while the same claim against his non-defaulting codefendants remained pending. The court noted that the inconsistent judgments created an incongruent, unseemly, and absurd result. *Id.* at 554. The Court then explained the proper procedure that should be followed in such cases:

> [If a complaint asserts a claim against] several
> defendants, and one of them makes default,
> [the proper procedure] is simply to enter a
> default . . . against him, and proceed with the

---

[2] These facts are taken from the syllabus that precedes the Supreme Court's opinion in *Frow*. They are also confirmed in 10 James Wm. Moore et al., *Moore's Federal Practice — Civil* § 55.36[2] (3d ed. 2022).

cause upon the answers of the other defendants. *The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing.* But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike — the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all.

*Frow*, 82 U.S. at 554 (emphasis added).

¶ 97    There are two aspects of *Frow* to which the majority opinion does not abide. First, *Frow* involved a claim against multiple defendants in which the relief sought — title to the disputed parcel — could not be awarded against one defendant and not the others. *See* 10 James Wm. Moore et al., *Moore's Federal Practice — Civil* § 55.36[2] (3d ed. 2022) ("*Frow* stands for the narrow rule that a default judgment may not be entered against one of several defendants (1) when the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) when the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant."); *see also Jefferson v.*

*Briner, Inc.*, 461 F. Supp. 2d 430, 435 n.6 (E.D. Va. 2006) (noting a divide among federal courts regarding whether *Frow* is limited to cases involving joint and several liability).  *But see In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (stating that, in the context of a bankruptcy case concerning the perfection of security interests, *Frow* "appl[ies] to defendants who are similarly situated, even if not jointly and severally liable").

¶ 98    The claims involved in this case do not involve joint and several liability.  Indeed, in 1986, the Colorado General Assembly abolished the doctrine of joint and several liability and replaced it with pro rata liability for defendants based on their respective percentage of fault in causing the claimant's damages.  *Niemet v. Gen. Elec. Co.*, 843 P.2d 87, 90 (Colo. App. 2001) (citing § 13-21-111.5, C.R.S. 1987), *aff'd*, 866 P.2d 1361 (Colo. 1994).  Thus, on the claims against Metro Taxi that were submitted to the jury (negligence, negligent supervision, negligent retention, and negligent infliction of emotional distress), Metro Taxi could not be held jointly and severally liable with any judgment entered against Ortiz.  Instead, Metro Taxi could only be held liable for the

percentage of fault that its wrongful conduct, if any, contributed to the cause of E.B.'s damages.

¶ 99    Moreover, a monetary judgment could be entered on the claims against Ortiz (outrageous conduct, intentional infliction of emotional distress, battery, and assault) without entering a monetary judgment against Metro Taxi. Likewise, a finding that Metro Taxi was not liable — for example, because it did not know or should not have known that Ortiz's character or prior conduct created an unreasonable risk of harm to passengers — could have been resolved without resolving the question of whether a sexual assault occurred. If the jury returned a verdict finding that Metro Taxi was not at fault, then the case would have proceeded only on the claims asserted against Ortiz, and Metro Taxi would face no liability.

¶ 100    If the jury found that Metro Taxi was at fault, the claims against it could not be fully resolved until a jury determined the percentage of fault to be allocated between Ortiz and Metro Taxi. But this could have occurred at a single subsequent trial, and at that trial, the jury could have been instructed, consistent with the prior clerk's default and the jury's prior allocation of fault, that

45

Ortiz was deemed, as a matter of law, to have assaulted E.B. The jury would then be required to allocate the separate percentages of fault to be attributed to Ortiz and Metro Taxi. The jury would also be required to determine the amount of E.B.'s damages, if any. Ortiz would be responsible for the percentage of damages that corresponded to the percentage of fault attributed to him, and Metro Taxi would have been responsible for damages proportional to the percentage of fault the jury attributed to it.

¶ 101 Both of these results would have preserved the legal impact of Ortiz's default. And in either scenario, neither Ortiz nor Metro Taxi would have faced liability for damages they did not cause. And there would be no problem awarding separate monetary damages against Ortiz and Metro Taxi if they were both found liable — trial courts throughout Colorado routinely do just that when multiple codefendants are both held liable in tort for a claimant's personal injuries.

¶ 102 I acknowledge that there is some theoretical tension in precluding Metro Taxi from contesting that the assault actually occurred. But to say that enforcing the consequence of the default against Ortiz deprives Metro Taxi of its opportunity to defend the

case against it stretches credulity based on how co-tortfeasors are treated in Colorado. Moreover, any conceivable inconsistency would be obviated if Metro Taxi simply demonstrated that it was not at fault or that E.B. suffered no damages. Given these dynamics, I cannot see how enforcing the default against Ortiz would have deprived Metro Taxi of a meaningful opportunity to defend the claims asserted against it.

¶ 103 Finally, allowing Ortiz to testify at the trial on the claims asserted against Metro Taxi while he was in default ran afoul of the Supreme Court's basic instructions in *Frow*: A defaulted defendant is not "entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing." 82 U.S. at 554. Colorado appellate courts have recognized and applied this foundational principle of *Frow*. *See, e.g., Salomon Smith Barney, Inc. v. Schroeder*, 43 P.3d 715 (Colo. App. 2001) ("Although a default could properly enter against the defendant in *Frow*, and *although he could not participate further in the proceedings*, he would be entitled to the benefit of any favorable judgment that might enter against his codefendants.") (emphasis added).

¶ 104    The majority's rationale gives Ortiz the benefit of the *Frow* rule

without adhering to the basic precept that any judgment entered in

favor of the remaining defendants must be obtained without the

participation of the defaulted defendant.[3]  And in doing so, the

majority approves a process that is contrary to the principles of

consistency, accountability, and fairness that it seeks to promote.

### B.    The Inconsistency

¶ 105    While the parties did not cite *Frow* in the trial court, E.B.

sought its protections by objecting to Metro Taxi calling Ortiz as a

witness.

¶ 106    The trial court attempted to address E.B.'s concerns by

instructing the jury that the court had already "found [Ortiz] liable

to [E.B.] and a cause of her damages, if any."  At the same time,

however, the court instructed the jury to answer the question

whether E.B. was sexually assaulted by Ortiz.  Yet, the court gave

---

[3] The majority cites *Henry v. Oluwole*, 108 F.4th 45 (2d Cir. 2024), in support of the approach it adopts.  While it is true that a defaulted defendant was allowed to testify at the trial of his non-defaulting codefendants in *Henry*, the case did not discuss the propriety of permitting such testimony, so the issue was not expressly addressed.  Moreover, the nonbinding precedent of *Henry* does not address whether Connecticut, the originating jurisdiction, had enacted a statute that abolished joint and several liability.

the jury no guidance on how it was to resolve this inconsistency: Ortiz was liable for the assault as a matter of law, but the jury could still conclude that no assault occurred.

¶ 107 The essential premise of *Frow,* and the principle the majority leans heavily on, is that the law does not tolerate inconsistent results. But the inconsistency in this case was created by the trial court allowing the jury to hear testimony from Ortiz that he did not sexually assault E.B., when the trial court had already determined, as matter of law, that his default resulted in a legally binding admission that he had assaulted her. In essence, the trial court applied the remedy of *Frow* — setting aside the default judgment — to cure an inconsistency that could have been avoided by applying the prophylactic condition designed to prevent such an inconsistency — prohibiting Ortiz from testifying in a manner that was inconsistent with the facts he was deemed to have admitted.

### C. Accountability

¶ 108 The majority opinion begins with a reference to the established and venerable principle that "[p]arties ignore litigation deadlines at their peril." *Supra* ¶ 1. The conundrum in this case was created by Ortiz's failure to timely file an answer to the complaint coupled with

his subsequent two-year delay in moving to set aside the default prior to the trial of the claims against Metro Taxi. If Ortiz had timely moved to set aside the default, the inconsistencies could have been avoided. But he chose not to do that, instead moving to set aside the default judgment only after the jury trial and resulting judgment in favor of Metro Taxi.

¶ 109 Rather than holding Ortiz accountable for ignoring basic pleading deadlines, the rationale of the majority opinion results in a profound reward: a judgment entered in Ortiz's favor without ever having to face a trial on the merits of E.B.'s claims against him. Rather than experiencing peril for ignoring his obligations, the outcome in this case rewards him for such behavior.

¶ 110 The majority notes that E.B. failed to file the motion for entry of default judgment until long after the thirty-five-day deadline set by the trial court. To the extent that this rationale is offered to justify the incongruities explained above, I'm not persuaded. Indeed, under *Frow* and its progeny, the court was not permitted to enter a judgment against Ortiz until the claims against Metro Taxi were resolved:

> The true mode of proceeding where a [complaint] makes a joint charge against several defendants, and one of them makes default, is simply to enter a default . . . against him, and proceed with the cause upon the answers of the other defendants. . . . [A] final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

*Frow*, 82 U.S. at 554. Thus, under *Frow* it would have been futile for J.B. to move for the entry of a judgment against Ortiz within thirty-five days. Her failure to do so therefore provides no support for the majority's conclusion.

¶ 111 The majority also seems to imply that J.B. acquiesced in allowing Ortiz to testify and deny the assault because J.B.'s counsel tendered an instruction that asked the jury to determine whether Ortiz sexually assaulted E.B. But counsel tendered that instruction after the court made multiple pretrial rulings stating that it would allow Metro Taxi to contest that issue and allow Ortiz to testify and deny that the assault occurred. But as late as the final jury instruction conference, J.B.'s counsel still contested the jury's resolution of this issue in a manner inconsistent with Ortiz's default. Thus, J.B. did not waive this issue. *See Bennett v. Greeley*

51

*Gas Co.*, 969 P.2d 754, 758 (Colo. App. 1998) (a motion in limine is adequate to preserve an objection to the evidence).

¶ 112   In sum, the principles of accountability noted by the majority do not support punishing E.B. and certainly do not support a result that rewards Ortiz for his default.

D.    Absurdities

¶ 113   While grounded in concerns for consistent verdicts, the process followed by the district court created legal absurdities of equal or greater magnitude.  It required the jury to resolve the issue of whether the sexual assault occurred through Ortiz's testimonial denials, despite the fact that he was deemed to have admitted, as a matter of law, that the assault occurred.  Relatedly, the jury was asked to resolve whether the assault occurred despite the court having held that Ortiz was liable for the assault.

¶ 114   The majority justifies this process, at least in part, on the notion that J.B. had the opportunity to litigate whether the assault occurred at the trial involving Metro Taxi.  Ortiz proffers the same rationale, reasoning that J.B. had a full opportunity to litigate the claims against Ortiz.  But as the majority correctly notes, the trial court expressly declared that the jury would be asked to determine

52

"the underlying allegations of sexual assault relate to [Metro Taxi's] liability." Consistent with that explanation, the trial court did not instruct the jury on E.B.'s claims against Ortiz, and it did not permit the jury to return a verdict on those claims. Thus, J.B.'s claims against Ortiz were never tried or adjudicated.

¶ 115 Contrast that outcome to the process that the majority opinion contemplates for Ortiz. Clearly, if J.B. had prevailed on the claims against Metro Taxi, J.B. could not have relied on those verdicts for the entry of a judgment against Ortiz. Ortiz would have been entitled to his day in court to contest J.B.'s claimed damages. Yet, under the majority's rationale, Ortiz was permitted to rely on those same verdicts in favor of Metro Taxi to defeat J.B.'s claims against him.

¶ 116 Effectively, the majority rationale gives a defaulting party two bites at the proverbial apple, the first by testifying at a trial involving the non-defaulting party in a manner that directly contradicts the facts deemed admitted as a matter of law by virtue of the default. And the second, if unhappy with the jury's verdict on the claims against the non-defaulting party, by permitting the defaulted party to demand a second trial to contest the issues of

damages. In contrast to affording a defaulting party the benefit of two trials, the majority rationale deprives a plaintiff of any trial or verdict on the claims asserted against the defaulted party.

¶ 117 This scenario results in a reward to a defaulting party — prevailing on a claim without ever facing the merits of that claim — and an unwarranted punishment of a non-defaulting party — depriving them of their day in court to present their claims against the defaulting defendant with liability established as a matter of law. Such a conclusion does not serve the laudable principles of consistency, accountability, or basic fairness.

## III. Conclusion

¶ 118 For the reasons stated, I respectfully dissent.