1
 2026 CO 50 J.B., as legal guardian and personal representative of E.B., an adult with a disability, Petitioner v. MKBS, LLC d/b/a Metro Taxi, Inc. a/k/a Metro Transportation Planning and Solution Group and Jesus Manuel Ortiz. Respondents No. 24SC747Supreme Court of Colorado, En BancJune 23, 20262
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 23CA1415
 
 
          
 Attorneys for Petitioner: Burg Simpson Eldredge Hersh
 &Jardine, P.C. Jessica B. Prochaska Jessica L. Breuer D.
 Dean Batchelder Englewood, Colorado
 
 
          
 Attorneys for Respondent MKBS, LLC d/b/a Metro Taxi, Inc.
 a/k/a Metro Transportation Planning and Solution Group:
 Harris, Karstaedt, Jamison &Powers, P.C. Jamey W. Jamison
 Mark A. Sares Englewood, Colorado
 
 3
 
          
 Attorneys for Respondent Jesus Manuel Ortiz: Squire Patton
 Boggs (US) LLP Keith Bradley Kayla Marie Mendez Denver,
 Colorado Squire Patton Boggs (US) LLP Samuel Ballingrud
 Washington, District of Columbia
 
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 JUSTICE BOATRIGHT, JUSTICE GABRIEL, JUSTICE SAMOUR, JUSTICE
 BERKENKOTTER, and JUSTICE BLANCO joined. CHIEF JUSTICE
 MARQUEZ dissented.
 
 4
 
          
 OPINION
 
 
           HOOD,
 JUSTICE.
 
 
          ¶1
 Jesus Manuel Ortiz was accused of sexually assaulting E.B.,
 whom he regularly drove to activities as part of his
 employment with MKBS, LLC ("MKBS"), a taxi company.
 E.B.'s legal guardian, J.B., [1] sued both Ortiz and MKBS;
 however, Ortiz never responded to the complaint, and the
 district court entered a clerk's default against him.
 
 
          ¶2
 During J.B.'s subsequent trial against MKBS, the court
 allowed Ortiz to testify contrary to the facts established by
 his default, and the jury found in MKBS's favor. Then,
 upon Ortiz's request, the court set aside the default and
 entered judgment in Ortiz's favor.
 
 
          ¶3
 J.B. appealed. We agree with the division majority below that
 the district court properly (1) allowed Ortiz to testify at
 MKBS's trial (despite the default), (2) set aside the
 default judgment entered against Ortiz, and (3) entered
 judgment in his favor consistent with MKBS's jury
 verdict. Therefore, we affirm the judgment of the court of
 appeals.
 
 5
 
          I.
 Facts and Procedural History
 
 
          ¶4
 J.B. is the personal representative and legal guardian of
 E.B., a cognitively impaired, blind adult who uses a
 wheelchair. For several years, E.B. used MKBS to transport
 her to a day-program center. Ortiz was E.B.'s regular
 driver for a few months, and E.B. alleged that, during one of
 her trips with Ortiz, he sexually assaulted her.
 
 
          ¶5
 J.B. filed suit against MKBS and Ortiz based on the alleged
 sexual assault. She asserted claims against Ortiz for
 outrageous conduct, intentional infliction of emotional
 distress, battery, and assault. She also asserted claims
 against MKBS for negligent hiring and retention, negligent
 supervision, negligence, negligent infliction of emotional
 distress, respondeat superior liability, and outrageous
 conduct. MKBS filed a timely answer denying the claims
 against it. Ortiz failed to respond to the complaint, and the
 district court granted J.B.'s motion for entry of default
 against Ortiz pursuant to C.R.C.P. 55(a).
 
 
          ¶6
 The effect of the default was that Ortiz was deemed to have
 admitted the material allegations in J.B.'s complaint.
 See Pinkstaff v. Black &Decker (U.S.) Inc., 211
 P.3d 698, 703 (Colo. 2009). The order granting the entry of
 default directed J.B. to file a motion for default judgment
 against Ortiz within thirty-five days. J.B., however,
 didn't move for a default judgment for almost two years
 (after the civil trial against MKBS).
 
 6
 
          ¶7
 While the civil case was pending, Ortiz faced criminal
 charges for the same incident. J.B. and MKBS conferred and
 jointly filed a motion to stay the civil proceedings pending
 resolution of Ortiz's criminal trial due to impediments
 to discovery and the development of evidence for both
 parties. The district court granted the motion. The criminal
 case went to trial, and a jury acquitted Ortiz. In the civil
 case, J.B. filed, and the court granted, a motion to exclude
 evidence of Ortiz's acquittal in the criminal case.
 
 
          ¶8
 At a pretrial conference, MKBS indicated that it planned to
 call Ortiz to testify in its defense. J.B. moved to preclude
 Ortiz from making any arguments or presenting testimony that
 would contradict the factual allegations he admitted by
 default. The district court denied the motion, concluding
 that J.B. knew she had to prove liability as to MKBS and
 failed to provide authority to support her claim that
 Ortiz's default admissions were binding on MKBS or that
 MKBS was precluded from introducing Ortiz's testimony as
 it related to MKBS's liability.
 
 
          ¶9
 The jury trial began, but the court quickly declared a
 mistrial because Ortiz was at the courthouse talking near and
 with prospective jurors about the lawsuit and the fact that
 he was accused of sexual assault. The court reset the trial
 to begin a couple of months later.
 
 7
 
          ¶10
 At trial, Ortiz testified for MKBS and denied sexually
 assaulting E.B. He also acknowledged that he was in default
 and aware that MKBS's lawyer was not representing him in
 the civil case.
 
 
          ¶11
 Before closing arguments, the district court read, among
 others, the following jury instruction aloud in open court:
 
 
 When a defendant has failed to defend himself in a lawsuit, a
 default shall enter against him. An entry of default
 establishes a defendant's liability and the allegations
 in the plaintiff's complaint concerning the defaulting
 defendant are deemed admitted as to that defendant. An entry
 of default, however, is not an admission regarding damages.
 
 
 Jesus Ortiz is a defaulting defendant.
 
 
          The
 jury returned a verdict in MKBS's favor, and on a special
 verdict form, the jury indicated that, "with respect to
 all claims against [MKBS]," Ortiz didn't sexually
 assault E.B. The jury also concluded that E.B. didn't
 have any injuries, damages, or losses from the alleged sexual
 assault.
 
 
          ¶12
 About a month after the trial, J.B. moved for entry of a
 default judgment against Ortiz pursuant to C.R.C.P. 55(b).
 The court entered judgment against Ortiz in the amount of
 almost $700,000 based on the evidence that J.B. had presented
 during MKBS's trial.
 
 
          ¶13
 Then, Ortiz, filing pro se, moved to set aside the default
 judgment. The district court granted Ortiz's motion,
 finding that he had established excusable neglect. J.B. moved
 for reconsideration, and the court denied J.B.'s motion.
 
 8
 
          ¶14
 Ortiz, now represented by counsel, then moved for entry of
 judgment in his favor. After a hearing, the court granted the
 motion. The court relied on the verdict from MKBS's jury
 trial in issuing its order. And because the jury had found
 that E.B. had no injury, damages, or losses from the alleged
 sexual assault, the court concluded that the determination of
 damages had been fully resolved.
 
 
          ¶15
 J.B. appealed, and in a split decision, a division of the
 court of appeals affirmed the district court's judgment.
 J.B. v. MKBS, LLC, 2024 COA 117, ¶ 89, 563 P.3d
 189, 203. Judge Schutz dissented, expressing concern that the
 majority opinion "reward[ed] a defendant who failed to
 comply with litigation deadlines, and depriv[ed] a plaintiff
 of their opportunity to try their claims against the
 defaulted defendant." Id. at ¶ 92, 563
 P.3d at 203 (Schutz, J., dissenting).
 
 
          ¶16
 J.B. petitioned this court for certiorari review, and we
 granted her petition.[2]
 
 9
 
          II.
 Analysis
 
 
          ¶17
 We begin by addressing the issue of preservation and
 identifying the standard of review. Next, we discuss whether
 a defaulting defendant may testify at a non-defaulting
 codefendant's trial contrary to facts deemed admitted by
 his default. Then, we review the factors a court must balance
 before setting aside a default judgment and apply them to the
 facts of this case. Finally, we analyze whether the district
 court erred by entering judgment in favor of Ortiz based on
 the jury verdict in MKBS's trial.
 
 
          A.
 Preservation and Standard of Review
 
 
          ¶18
 Ortiz argues that J.B. did not preserve the issue of whether
 a defaulting defendant may testify at a non-defaulting
 codefendant's trial. However, we agree with the division
 majority that J.B. preserved this issue through her motion
 arguing that she would be unfairly prejudiced if the court
 permitted Ortiz to testify. See J.B., ¶ 34, 563
 P.3d at 195.
 
 
          ¶19
 We review a district court's decision on whether to allow
 someone to testify for an abuse of discretion. See Murray
 v. Just In Case Bus. Lighthouse, LLC, 2016 CO 47M,
 ¶¶ 32, 41, 374 P.3d 443, 453, 455. We also review a
 district court's order setting aside a default judgment
 for an abuse of discretion. McMichael v. Encompass PAHS
 Rehab. Hosp., LLC, 2023 CO 2, ¶ 12, 522 P.3d 713,
 719. A district court abuses its discretion when its decision
 is based on a misapplication or misinterpretation
 
 10
 
 of the law, or is otherwise manifestly arbitrary,
 unreasonable, or unfair. People v. West, 2025 CO 61,
 ¶ 13, 578 P.3d 832, 835; People v. Chavez, 2020
 COA 80M, ¶ 8, 486 P.3d 377, 378.
 
 
          ¶20
 Whether a defaulting party's testimony is admissible in a
 non-defaulting defendant's trial and whether a defaulting
 defendant is entitled to judgment in his favor to avoid
 inconsistent adjudications are questions of law, which we
 review de novo. See Dickinson v. Lincoln Bldg.
 Corp., 2015 COA 170M, ¶ 21, 378 P.3d 797, 804.
 
 
          B.
 Permitting a Defaulting Defendant to Testify at a
 Non-Defaulting Codefendant's Trial
 
 
          ¶21
 Rule 55 governs the entry of default judgments. Under Rule
 55(a), a clerk shall enter a default "[w]hen a party
 against whom a judgment for affirmative relief is sought has
 failed to plead or otherwise defend." An entry of
 default "constitutes an admission by the defendant of
 the material allegations contained in the complaint, and the
 only remaining issue to be determined is the amount of
 damages." Pinkstaff, 211 P.3d at 703; see
 also Kwik Way Stores, Inc. v. Caldwell, 745 P.2d 672,
 678 (Colo. 1987) (explaining that an entry of "default
 establishes liability but does not fix the amount of
 damages" (citation omitted)). The plaintiff may then
 move for a default judgment to be entered, after which the
 court will determine damages and, if needed, may hold a
 hearing to do so. C.R.C.P. 55(b)(1). Defaulting defendants
 may not challenge their liability at a Rule 55(b)(1) damages
 
 11
 
 hearing. Dickinson, ¶ 37, 378 P.3d at 806.
 Unless a default is set aside, a defendant is precluded from
 "urging anything contrary to the complaint."
 Bettcher v. State ex rel. Att'y Gen., 344 P.2d
 969, 971 (Colo. 1959). In other words, a defaulting defendant
 may not testify or present evidence at a damages hearing that
 is contrary to the factual basis he is deemed to have
 admitted by the entry of default. ¶22 The Rules are
 silent about the use of a defaulting defendant's
 testimony in other proceedings.
 
 
          ¶23
 For two reasons, the division majority held that the district
 court didn't abuse its discretion by allowing MKBS to
 call Ortiz as a witness: (1) Ortiz's testimony was
 relevant to the central question of whether MKBS was liable
 to J.B., and MKBS's ability to defend itself would be
 materially prejudiced if Ortiz was prevented from testifying;
 and (2) Ortiz didn't testify in his capacity as a
 codefendant and didn't challenge his own liability under
 the default—he was a subpoenaed witness in a
 non-defaulting defendant's trial. J.B.,
 ¶¶ 37-39, 44-46, 563 P.3d at 196-97. J.B. counters
 that allowing defaulting defendants to testify about their
 liability would undercut the reasons for default. We agree
 with the division majority that the district court didn't
 abuse its discretion.
 
 
          ¶24
 Defendants are generally allowed to defend themselves with
 the best evidence available, subject to the limits imposed by
 constitutions, rules, and statutes. See CRE 402
 ("All relevant evidence is admissible, except as
 otherwise
 
 12
 
 provided by the Constitution of the United States, by the
 Constitution of the State of Colorado, by these rules, or by
 other rules prescribed by the Supreme Court, or by the
 statutes of the State of Colorado."); see also Pub.
 Utils. Comm'n v. Donahue, 335 P.2d 285, 291 (Colo.
 1959) (stating that parties should be afforded a fair
 opportunity to present their case and submit all pertinent
 facts). "The truthseeking function of our legal system
 is thwarted . . . if the finder of fact is denied [material]
 evidence at trial." Warembourg v. Excel Elec.,
 Inc., 2020 COA 103, ¶ 1, 471 P.3d 1213, 1217.
 Accordingly, a non-defaulting codefendant may call a
 defaulting defendant to testify, as long as doing so
 isn't prohibited by other sources of law. See Henry
 v. Oluwole, 108 F.4th 45, 49-50 (2d Cir. 2024)
 (concerning a defaulting employee testifying at his
 employer's trial for claims deriving from the
 employee's conduct).
 
 
          ¶25
 Our conclusion isn't novel. For example, in
 Henry, the plaintiff alleged that her doctor
 sexually assaulted her. Id. at 49. She asserted
 numerous claims against the doctor and the hospital where he
 worked at the time of the alleged assault. Id. The
 doctor failed to respond to the complaint, and the court
 entered a default against him. Id. At the subsequent
 trial against the hospital, the doctor was allowed to
 testify, and the jury found that he hadn't assaulted the
 plaintiff, absolving the hospital of liability. Id.
 at 50.
 
 13
 
          ¶26
 Just as the hospital in Henry relied on the
 doctor's testimony to defend against the sexual assault
 allegations, MKBS called Ortiz to defend itself. Therefore,
 we find this federal precedent instructive. See Ferraro
 v. Frias Drywall, LLC, 2019 COA 123, ¶ 15, 451 P.3d
 1255, 1259 (explaining that Colorado's default judgment
 rule—Rule 55—is similar to its federal
 counterpart, so we may rely on federal cases for guidance in
 interpreting the rule); see also Brown v. Walker Com.,
 Inc., 2022 CO 57, ¶ 15, 521 P.3d 1014, 1018. Ortiz
 was one of only two people present at the time of the alleged
 sexual assault, so MKBS would've been prejudiced if it
 hadn't been allowed to call him as a witness. See
 People v. Jackson, 2018 COA 79, ¶ 51, 474 P.3d 60,
 72 (stating that the jury's truth-finding function and
 the interests of justice are better served by admitting
 observations from someone who was a firsthand witness to the
 event), aff'd, 2020 CO 75, 472 P.3d 553.
 ¶27 Additionally, the clerk's entry of default
 against Ortiz constituted an admission of the facts alleged
 in the complaint, but it wasn't a judgment on the merits
 of the case. We have a long-established preference for
 resolving cases on the merits rather than through default
 judgments whenever possible. See McMichael, ¶
 11, 522 P.3d at 718-19. Prohibiting MKBS from introducing
 Ortiz's firsthand testimony because of an entry of
 default against Ortiz would subvert this preference. Allowing
 Ortiz to testify promoted the truth-seeking function of our
 legal system.
 
 14
 
          ¶28
 Furthermore, although defaulting defendants are prohibited
 from challenging their liability at a Rule 55(b)(1) damages
 hearing, Dickinson, ¶ 37, 378 P.3d at 806,
 there is no rule that prevents a defaulting defendant from
 testifying as a witness at a different defendant's trial.
 The trial here was limited in scope to determining MKBS's
 liability and damages. Ortiz's liability to J.B.
 wasn't at issue in this trial; he was testifying as a
 subpoenaed witness (not a codefendant), and the jury was
 instructed that he was deemed liable for the sexual assault
 by virtue of his default.
 
 
          ¶29
 Therefore, we agree with the division majority that the
 district court didn't abuse its discretion by allowing
 Ortiz to testify at MKBS's trial even though his
 testimony contradicted the facts admitted by his default.
 See J.B., ¶ 48, 563 P.3d at 197.
 
 
          C.
 Setting Aside a Default Judgment
 
 
          ¶30
 Default judgment is disfavored and should be imposed only in
 extreme circumstances. McMichael, ¶ 11, 522
 P.3d at 718. "A judgment by default is not designed to
 be a device to catch the unwary or even the negligent."
 R.F. v. D.G.W., 560 P.2d 837, 839 (Colo. 1977). And
 so, "when doubt exists as to whether a default should be
 granted or vacated, the doubt should be resolved in favor of
 the defaulting party." Henry, 108 F.4th at 51
 (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90,
 96 (2d Cir. 1993)).
 
 15
 
          ¶31
 Rule 55(c) allows a court to set aside a default judgment in
 accordance with C.R.C.P. 60(b). Under Rule 60(b), the
 defaulting party has the burden to prove by clear and
 convincing evidence that the court should grant the motion to
 set aside a default judgment. Goodman Assocs., LLC v. WP
 Mountain Props., LLC, 222 P.3d 310, 315 (Colo. 2010). A
 court may set aside a default judgment if the defaulting
 party establishes excusable neglect for its failure to
 respond. C.R.C.P. 60(b). A court should consider three
 factors in determining whether to set aside a default
 judgment for excusable neglect: "(1) whether the neglect
 that resulted in entry of judgment by default was excusable;
 (2) whether the moving party has alleged a meritorious claim
 or defense; and (3) whether relief from the challenged order
 would be consistent with considerations of equity."
 Goodman, 222 P.3d at 319. Because resolution of a
 dispute on the merits is favored over a default judgment,
 courts should liberally construe these factors in favor of
 the defaulting party. Id. at 320.
 
 
          ¶32
 The division majority held, and we agree, that the district
 court "did not abuse its discretion by setting aside the
 default judgment entered against Ortiz because it properly
 considered the three C.R.C.P. 60(b) factors."
 J.B., ¶ 56, 563 P.3d at 198.
 
 
          ¶33
 First, the division majority agreed with the
 district court's finding that Ortiz's failure to
 respond to J.B.'s complaint was excusable because he was
 
 16
 
 legitimately confused about whether an attorney represented
 him. Id. at ¶¶ 57, 64-65, 563 P.3d at
 198-99. The district court reasonably relied on Ortiz's
 explanation in his motion to set aside the default, in which
 he said that he believed that MKBS's attorneys
 represented him because the incident happened during his
 employment. Id. at ¶¶ 62, 64, 563 P.3d at
 199. Additionally, Ortiz explained that, because he had a
 public defender represent him during his criminal trial and
 because he was acquitted, he was confused as to what actions
 he needed to take in the civil case. Id. at ¶
 57, 563 P.3d at 198.
 
 
          ¶34
 We agree with the division majority that the district court
 properly applied an objective test in finding that
 Ortiz's assumptions were reasonable. Id. at
 ¶ 62, 563 P.3d at 199. Excusable neglect hinges on
 whether a reasonably careful person would have similarly
 neglected a duty. Goodman, 222 P.3d at 319.
 "Common carelessness and negligence do not amount to
 excusable neglect." Id. (quoting In re
 Weisbard, 25 P.3d 24, 26 (Colo. 2001)). But a reasonably
 careful person in Ortiz's situation could have believed
 that his employer's counsel represented him because the
 civil case arose out of an event that occurred while Ortiz
 was on the job. And although Ortiz testified at trial that he
 understood that MKBS's attorney didn't represent him,
 he didn't say when he came to this understanding. The
 district court noted that Ortiz didn't appear to have a
 sophisticated grasp of the legal process, and it was
 therefore reasonable for him to believe that his
 employer's
 
 17
 
 counsel would also be representing him. We conclude that the
 district court didn't abuse its discretion by concluding
 that, under these circumstances, a reasonably careful person
 might have similarly neglected the duty to respond to the
 complaint.
 
 
          ¶35
 Second, we agree with the division majority that the
 district court didn't abuse its discretion by concluding
 that the outcome of the MKBS trial indicated that Ortiz had a
 meritorious defense. See J.B., ¶¶ 58, 66,
 563 P.3d at 198-99. At MKBS's trial, the jury found that
 Ortiz didn't assault E.B. and that E.B. didn't have
 any injuries, damages, or losses from the alleged sexual
 assault. Id. at ¶ 58, 563 P.3d at 198. He was
 also acquitted of all criminal charges. Id.
 
 
          ¶36
 Third, in determining whether setting aside a
 default judgment would be consistent with considerations of
 equity, a court should "take into account the promptness
 of the moving party in filing the [R]ule 60(b) motion, the
 fact of any detrimental reliance by the opposing party on the
 order or judgment of dismissal, and any prejudice to the
 opposing party if the motion were to be granted."
 Goodman, 222 P.3d at 319 (quoting Buckmiller v.
 Safeway Stores, Inc., 727 P.2d 1112, 1116 (Colo. 1986)).
 Here, the division majority held that the district court
 properly concluded that the considerations of equity weighed
 in Ortiz's favor because Ortiz filed his motion to set
 aside the default only three weeks after its entry and,
 
 18
 
 although his actions caused a mistrial, when given
 instructions by the court, he complied with them. See
 J.B., ¶ 60, 563 P.3d at 198-99.
 
 
          ¶37
 The division majority was also unpersuaded by J.B.'s
 argument that it would be unfair to set aside the default
 because she had relied on it. Id. at ¶¶
 67-68, 563 P.3d at 199-200. The division majority noted that
 J.B. waited until after the MKBS trial to move for default
 judgment against Ortiz despite the court's entry of
 default two years earlier. Id. at ¶ 68, 563
 P.3d at 199-200. A motion to set aside a judgment under Rule
 60(b) is used to set aside a default judgment issued
 under Rule 55(b), not to set aside a clerk's
 entry of default under Rule 55(a). So, in
 determining whether J.B. detrimentally relied on the default
 against Ortiz, the district court correctly looked at the
 default judgment entered after the trial in 2021, not the
 clerk's default entered in 2019.
 
 
          ¶38
 Even if we were to consider J.B.'s reliance on the
 clerk's entry of default in 2019, any prejudice to her
 was minimal. J.B. knew that MKBS planned on calling Ortiz to
 testify, and she was able to present evidence about the
 alleged sexual assault and to cross-examine Ortiz.
 
 
          ¶39
 Regarding the concern about J.B.'s expenses, had Ortiz
 timely answered J.B.'s complaint, she would have incurred
 similar costs to those already incurred in her case against
 MKBS, so setting aside the default would not substantially
 prejudice her. See Henry, 108 F.4th at 52-53
 ("[I]t must be shown that delay will
 
 19
 
 result in the loss of evidence, create increased difficulties
 of discovery, or provide greater opportunity for fraud and
 collusion." (quoting Davis v. Musler, 713 F.2d
 907, 916 (2d Cir. 1983))). And the division majority deemed
 the expense that J.B. might incur in a trial on the merits of
 her claim against Ortiz secondary to the other factors.
 J.B., ¶ 60, 563 P.3d at 198. We therefore agree
 with the division majority that the district court didn't
 abuse its discretion by concluding that the considerations of
 equity weighed in Ortiz's favor.
 
 
          D.
 Entering Judgment in Ortiz's Favor
 
 
          ¶40
 We agree with the United States Supreme Court that it would
 be "unseemly and absurd, as well as unauthorized by
 law" to allow a default judgment to create an
 incongruity with a judgment on the merits. Frow v. De La
 Vega, 82 U.S. 552, 554 (1872); see also In re Water
 Rts. of Elk Dance Colo., LLC, 139 P.3d 660, 667 (Colo.
 2006) (explaining that avoiding inconsistent judgments
 promotes reliance on the judicial system). So, we, like a
 majority of federal courts, adopt and expand the rule from
 Frow, which "prohibits a default judgment that
 is inconsistent with a judgment on the merits,"
 Moore v. Booth, 122 F.4th 61, 67 (2d Cir. 2024)
 (quoting Henry, 108 F.4th at 53), as long as
 "the defendants are 'similarly situated' or have
 'closely related defenses' even if not jointly
 liable," id. See Schenck v. Van Ningen, 719
 P.2d 1100, 1102 (Colo.App. 1986). Therefore, when a jury
 verdict conflicts with the
 
 20
 
 allegations in a plaintiff's complaint, a default
 judgment based on those allegations should be vacated.
 Henry, 108 F.4th at 56.
 
 
          ¶41
 Again, we find the Second Circuit's reasoning in
 Henry helpful. As in Henry, a judgment
 against Ortiz would directly conflict with the jury verdict
 entered at the conclusion of the MKBS trial, finding that
 Ortiz hadn't sexually assaulted E.B. and that E.B. had no
 injuries, damages, or losses from the alleged sexual assault.
 See Henry, 108 F.4th at 55-56, 63 (applying the rule
 from Frow, the court ordered the district court to
 enter judgment in favor of the doctor because the jury from
 the codefendant hospital's trial concluded that the
 doctor hadn't sexually assaulted the plaintiff). Similar
 to the plaintiff in Henry, who had the opportunity
 to examine and challenge the doctor's version of the
 alleged sexual assault and present essentially the same
 evidence at the hospital's trial that she would have
 presented in a trial against the doctor, 108 F.4th at 54,
 J.B. had the same opportunity to present evidence about the
 alleged sexual assault and cross-examine Oritz in the trial
 against MKBS as she would have had in a trial against Ortiz.
 
 
          ¶42
 Therefore, given the preference for a judgment on the merits
 over one entered by default and to avoid the entry of
 inconsistent judgments, we conclude that the district court
 didn't abuse its discretion by entering judgment in favor
 of Ortiz.
 
 21
 
          III.
 Conclusion
 
 
          ¶43
 We affirm the judgment of the court of appeals.
 
 
           CHIEF
 JUSTICE MARQUEZ dissented.
 
 22
 
           CHIEF
 JUSTICE MARQUEZ, dissenting.
 
 
          ¶44
 As Judge Schutz observed in his dissent below, this case
 "requires us to make difficult choices balancing the
 tension between the desire for entering consistent judgments,
 holding defaulted parties accountable, and ensuring parties
 an opportunity to pursue their claims." J.B. v.
 MKBS, LLC, 2024 COA 117, ¶ 90, 563 P.3d 189, 203
 (Schutz, J., dissenting). The majority strikes the balance
 today in a way that not only fails to hold Jesus Manuel Ortiz
 accountable for his default but ultimately rewards him for
 the very conundrum he created. Indeed, by upholding the entry
 of judgment in Ortiz's favor—a judgment that can be
 directly traced to Ortiz's improper testimony contrary to
 facts admitted through his default—the majority also
 simultaneously deprives the plaintiff of any opportunity to
 try her claims against Ortiz. All told, this is a startling
 outcome for a defendant who defaulted, and for a plaintiff
 who played by the rules.
 
 
          ¶45
 Today's outcome undermines the stability and
 predictability of the rules of procedure that undergird our
 legal system. Moreover, this outcome is unnecessary, assuming
 the goal was to strike a fair balance between the interests
 of the plaintiff, J.B., Ortiz, and MKBS, LLC
 ("MKBS").
 
 
          ¶46
 Importantly, the claims against MKBS did not require the jury
 to resolve the question of whether a sexual assault occurred.
 While MKBS may have preferred to have Ortiz testify that he
 did not sexually assault E.B., his testimony was not, in
 
 23
 
 fact, legally necessary to MKBS's defense. The district
 court nevertheless allowed Ortiz to testify as a
 witness at MKBS's trial to facts directly
 contrary to the admissions made through his default. This
 error set in motion a chain of events that ultimately allowed
 Ortiz to not only escape his own default but to ultimately
 claim judgment in his favor as a party on the merits
 of J.B.'s claims—all without ever facing a trial on
 those claims.
 
 
          ¶47
 The majority blesses this outcome, Maj. op. ¶ 3, and
 along the way, misapplies the narrow rule in Frow v. De
 La Vega, 82 U.S. 552, 554 (1872), while simultaneously
 ignoring the salient language from that decision emphasizing
 that a defaulting defendant is not entitled to "adduce .
 . . evidence" or "be heard" at a proceeding
 against a codefendant or to "appear in it in any
 way."
 
 
          ¶48
 For these reasons, I respectfully dissent.
 
 
          I.
 The Majority Misapplies Frow
 
 
          ¶49
 The majority relies on Frow to justify entering
 judgment in Ortiz's favor, reasoning that Frow
 "prohibits a default judgment that is inconsistent with
 a judgment on the merits." Maj. op. ¶ 40 (quoting
 Moore v. Booth, 122 F.4th 61, 67 (2d Cir. 2024)).
 But the decision in Frow stands for a narrow rule
 applicable to situations involving joint
 liability—which is not the case here.
 
 24
 
          ¶50
 In Frow, the plaintiff alleged a joint conspiracy by
 several defendants, including Frow, to defraud the plaintiff
 of a tract of land. 82 U.S. at 552-53.[1] Frow failed to
 respond to the complaint and the court entered a decree
 against him. Id. at 553. While Frow's appeal was
 pending, a bench trial proceeded against the nondefaulting
 defendants, and the court ultimately ruled in their favor.
 Id. In resolving Frow's appeal, the Supreme
 Court observed that "in such a case as this," the
 incongruent judgments (one against Frow and another in favor
 of all the other codefendants regarding title to the same
 property) created an "unseemly and absurd"
 situation. Id. at 554.
 
 
          ¶51
 The Court then explained the procedure to be followed in such
 cases: "[W]here a bill makes a joint charge
 against several defendants, and one of them makes default,
 [the proper procedure] is simply to enter a default . . .
 against him, and proceed with the cause upon the answers of
 the other defendants." Id. (emphasis added).
 The Court reasoned that if the case is then decided against
 the plaintiff on the merits, the case should be
 "dismissed as to all the defendants alike—the
 defaulter as well as the others"—and vice versa.
 Id.
 
 25
 
          ¶52
 Frow thus sought to avoid the specific outcome where
 "there might be one decree of the court sustaining the
 charge of joint fraud committed by the defendants;
 and another decree disaffirming the said charge, and
 declaring it to be entirely unfounded, and dismissing the
 [plaintiff's] bill." Id. (emphasis added).
 In other words,
 
 
 Frow stands for the narrow rule that a default
 judgment may not be entered against one of several defendants
 (1) when the theory of recovery is one of true joint
 liability, such that, as a matter of law, no one defendant
 may be liable unless all defendants are liable, or (2) when
 the nature of the relief demanded is such that, in order to
 be effective, it must be granted against each and every
 defendant.
 
 
 10 Moore's Federal Practice—Civil §
 55.36[2], LEXIS (database updated 2026).
 
 
          ¶53
 Frow's narrow rule is simply inapplicable here.
 The claims against MKBS that were submitted to the jury in
 this case (negligence, negligent supervision, negligent
 retention, and negligent infliction of emotional distress) do
 not involve joint and several liability with Ortiz. And
 importantly, a jury could find MKBS not liable for such
 claims (i.e., not negligent, or not a cause of the
 plaintiff's damages) without having to resolve the
 question of whether a sexual assault occurred. In other
 words, while MKBS preferred to contest that the assault
 occurred, it was not legally necessary for it to do so to
 avoid liability. Enforcing
 
 26
 
 the consequence of Ortiz's default would not have
 deprived MKBS of a meaningful opportunity to defend the case
 against it.[2]
 
 
          ¶54
 Instead, the majority concludes that "a non-defaulting
 codefendant may call a defaulting defendant to testify, as
 long as doing so isn't prohibited by other sources of
 law," Maj. op. ¶ 24, and that "there is no
 rule that prevents a defaulting defendant from testifying as
 a witness at a different defendant's trial,"
 id. at ¶ 28. But in fact, Frow
 expressly prohibits this.
 
 
          ¶55
 Indeed, the Court in Frow emphasized that a
 defaulting defendant is "not . . . entitled" to
 "appear in [the proceeding] in any way. He can
 adduce no evidence, he cannot be heard at
 the final hearing." 82 U.S. at 554 (emphases added).
 
 
          ¶56
 Thus, under Frow, the district court erred by
 permitting Ortiz to testify in this case at all, let alone
 testify contrary to the facts he admitted by default. As
 Judge Schutz explained,
 
 
 The [division] majority's rationale gives Ortiz the
 benefit of the Frow rule without adhering to the
 basic precept that any judgment entered in favor of the
 remaining defendants must be obtained without the
 participation of the defaulted defendant. And in doing so,
 the
 
 27
 
 majority approves a process that is contrary to the
 principles of consistency, accountability, and fairness that
 it seeks to promote.
 
 
 J.B., ¶ 104, 563 P.3d at 206 (Schutz, J.,
 dissenting) (footnote omitted).
 
 
          II.
 The Initial Error Under Frow Is Then
 Compounded
 
 
          ¶57
 Having taken this wrong turn at the outset, the majority,
 following the courts below, then compounds this error in
 multiple ways.
 
 
          ¶58
 First, the district court correctly instructed the jury that
 Ortiz, as a defaulting defendant, was liable to J.B. and a
 cause of her damages, if any. This was appropriate given that
 the court had already determined that Ortiz's default
 established a legally binding admission. But then, the court
 contradicted its own instructions by presenting the jury with
 a special verdict form asking it to determine whether Ortiz
 sexually assaulted E.B.[3] Importantly, neither the jury
 instructions nor the special verdict form contained any claim
 for relief against Ortiz, yet the district court
 later relied on Ortiz's testimony and the jury's
 responses to the special verdict form to determine that Ortiz
 had a meritorious defense justifying setting aside his
 default judgment.
 
 28
 
          ¶59
 The majority makes the same mistake. It concludes that the
 district court properly permitted Ortiz to testify contrary
 to the facts he admitted by default under C.R.C.P. 55 by
 reasoning that "Ortiz's liability to J.B. wasn't
 at issue in this trial; he was testifying as a subpoenaed
 witness (not a codefendant)." Maj. op. ¶ 28. But
 then, the majority affirms the division's reasoning
 allowing Ortiz to effectively leverage that testimony and the
 jury's special verdict finding to assert that he had a
 meritorious defense as a defaulting party under
 C.R.C.P. 60(b). Maj. op. ¶ 35 (agreeing with the
 division that the district court did not abuse its
 discretion); J.B., ¶ 58, 563 P.3d at 198
 (explaining that the district court did not abuse its
 discretion when "the court found that Ortiz
 'asserted a meritorious defense, namely that he did not
 assault [E.B.].'" (alteration in original)). Thus,
 the majority allows Ortiz's testimony at MKBS's trial
 specifically because Ortiz's liability is not at issue
 with respect to the claims against MKBS—but then
 permits Ortiz to use that very testimony and the resulting
 special verdict to directly contest his liability under
 C.R.C.P. 60(b).
 
 
          ¶60
 Finally, as if setting aside the default judgment were not
 enough, instead of allowing the plaintiff to move forward
 with her claims, the majority affirms the lower courts'
 additional final step of affirmatively entering judgment in
 Ortiz's favor on those claims, reasoning that
 Frow requires this result to avoid inconsistent
 
 29
 
 judgments. Maj. op. ¶¶ 40, 42. Yet for the reasons
 stated above, the rule of Frow is inapplicable here.
 
 
          ¶61
 None of this was necessary. As Judge Schutz explains, the
 inconsistency the majority seeks to remedy could have been
 avoided by prohibiting Ortiz from testifying contrary to the
 facts he was deemed to have admitted by his default.
 J.B., ¶ 107, 563 P.3d at 206 (Schutz, J.,
 dissenting).
 
 
          III.
 Conclusion
 
 
          ¶62
 And so, as a consequence of the initial erroneous decision,
 contrary to Frow, to allow Ortiz to testify directly
 contrary to facts deemed admitted as a matter of law by his
 default, Ortiz is rewarded with a judgment in his favor on
 the merits of J.B.'s claims, even though he defaulted,
 and even though J.B.'s claims against Ortiz were never
 tried or adjudicated. I agree with Judge Schutz that
 "[s]uch a conclusion does not serve the laudable
 principles of consistency, accountability, or basic
 fairness." Id. at ¶ 117, 563 P.3d at 208.
 
 
          ¶63
 Accordingly, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The complaint was filed by both of
 E.B.'s legal guardians, A.B. and J.B. However, only J.B.
 petitioned this court. For ease of reference, we only refer
 to J.B. throughout the opinion.
 
 
 [2] We granted certiorari to review the
 following issues:
 
 
 1. Whether the court of appeals erred in affirming the
 trial court's order permitting a defaulting defendant to
 testify contrary to the facts of his default.
 
 
 2. Whether the court of appeals erred in affirming the
 trial court's order entering judgment, premised on the
 verdict the jury reached after hearing a defaulting
 defendant's testimony contrary to his default, in favor
 of that same defendant.
 
 
 3. Whether the court of appeals erred in affirming the
 trial court's order setting aside the default judgment
 entered against a defaulting defendant, misapplying the
 applicable three factor test and its heightened standard of
 proof.
 
 
 [1] These facts are taken from the
 syllabus in Frow and confirmed in 10 Moore's
 Federal Practice—Civil § 55.36[2], LEXIS
 (database updated 2026). See also J.B., ¶ 95
 & n.2, 563 P.3d at 204 & n.2 (Schutz, J.,
 dissenting).
 
 
 [2] The majority's reliance on the
 Second Circuit's decision in Henry v. Oluwole,
 108 F.4th 45 (2d Cir. 2024), is misplaced. Maj. op. ¶
 41. The case is not binding, nor does it serve as persuasive
 precedent for the proposition cited by the majority. Although
 the defendant in that case was allowed to testify at the
 trial of his nondefaulting codefendants, the propriety of
 such testimony was neither raised by the parties nor
 addressed by the court. See Henry, 108 F.4th at
 49-50, 53-54.
 
 
 [3] Although the plaintiff presented this
 verdict form, she was essentially forced to do so after the
 district court made multiple pretrial rulings indicating that
 it would permit Ortiz to testify that he did not sexually
 assault E.B. And as Judge Schutz noted, the plaintiff
 continued to contest the district court's rulings.
 J.B., ¶ 111, 563 P.3d at 207 (Schutz, J.,
 dissenting).
 
 
 ---------